Baldwin, J.
The spirit of our statute law in regard to the making and revocation of wills, is, to restrain parol testimony on the subject within the narrowest practicable limits. Hence the solemnities of writing, signature, attestation. Revocations by cancel-ling or destroying the instrument arise naturally from the custody, control and dominion of the testator. Prescribed formalities in regard to them would be of little value, and would involve the necessity, in the event of nonobservance, of resorting to parol testimony for the purpose of setting up and establishing the ruined instrument; one of the very evils intended to be guarded against. Still, however, the statutes are not without their efficacy in relation to these as well as the other modes of revocation, by excluding the evidence of witnesses as to the conduct and declarations of the testator, except so far as they bear upon the permitted acts of revocation. This is obvious from the consideration, that, as nothing can supply the want of the acts of revocation, so nothing can extend them beyond the legal import and effect of the acts themselves. The act, however, of cancellation or destruction necessarily presents enquiries calling for or permitting the examination of parol proofs to a very considerable extent. The mere act most usually establishes itself; for if a will which had been executed by the testator, and retained in his custody, be found cancelled at his death, or after diligent enquiry cannot be found at all, the legal presumption *380 is that it was cancelled or destroyed by himself. But then this presumption is liable to be repelled by proof that the act of cancellation or destruction was done by some one else, without his knowledge and consent. So too, as the mind of the testator must accompany his physical act, every such case is open to proof of a mistake in point of fact: as if he were to throw ink upon his paper instead of sand, or, having two wills by him of different dates, should direct one of them to be can-celled or burnt, and the person so directed should through misapprehension or inadvertence cancel or burn the other. Still further, if the act in question be not a substantive, independent act, but dependent upon another, the whole forming together one transaction, we must look to the entire design and purpose, in order to ascertain whether a revocation has been accomplished. Thus, where a testator knowingly cancels or destroys his will, but with the belief that he has substituted or is about to substitute another in its place, which consequential or preliminary object is defeated by some accident or mistake, preventing the execution, or the complete and perfect execution, or the valid effect of the new will; in such cases, the work of revocation is incomplete and ineffectual. The purpose must concur with the act. And in this sense it is that there must be the animus revocandi; the purpose to revoke by the adopted mode of revocation. But the purpose alone is unavailing, without performance of the act itself. A general intent of the testator to alter his will, or change the disposition of his estate; a particular design to cancel or destroy it; an abortive attempt to do the very act in question, even though prevented by accident, fraud or violence, do not affect the legal validity of the instrument. The will must be cancelled or destroyed. How far the work of destruction must proceed, is not yet settled. It would seem that where the testator has done all that he designed to do for. the purpose of ac *381 tual destruction, and believes that he has accomplished it, a literal compliance with the statute is not indispensable, Moore &c. v. Moore &c. 1 Phill. 375. A slight tearing and burning were held sufficient in Bibb v. Thomas, 2 W. Black. 1043. A mere scorching of the envelope, not extending to the will it embraced, was held insufficient in Reed v. Harris, 33 Eng. Com. L. R. 57. However this may be, I think it clear that a cancellation or destruction, to effect a revocation of the whole instrument, must be directed against the whole, or an essential part of it; otherwise it can amount only to that partial cancellation or obliteration so well established as being a revocation pro tanto only. Swinb. Pt. 7. § 16. 1 Williams on Ex’ors 73. Scruby v. Fordham &c. 1 Add. 78. If a will, whether written on one sheet of paper or several sheets, be torn up by the testator, or thrown into the fire, then it is manifest that the act of destruction is directed against the whole instrument, though only a part be destroyed, and that part a codicil only; but if the testator cancels or obliterates a particular clause, or destroys one of the sheets, retaining and preserving the rest, then his purpose to destroy a part only is equally clear, and the sole question is as to the validity and effect of what remains uneradicated ; a question which may occur as to the whole residue of the instrument, or (as in Sutton v. Sutton, Cowp. 812. Larkins &c. v. Larkins &c. 3 Bos. & Pull. 16. Short v. Smith, 4 East 419.) as to the residue of a particular clause.
In the case before us, it was physically impossible that the act of destruction in question, the burning of the codicil, could have been directed against the will, inasmuch as the will was not present but in a different custody. And yet the court instructed the jury, that if the testator intended, at the time of destroying the codicil, thereby to revoke the will, in that case the destruction of the codicil was a revocation of both the will and the codicil. If this be correct, it must be either *382 because a codicil is so essential a part of a will that its revocation necessarily involves the revocation of the will, (a ground too palpably wrong to require discussion, and not assumed by the appellees’ counsel, nor by the circuit court); or because the destruction of a codicil, without any the slightest destruction of the will, or any attempt to destroy it, or even an intent to destroy it, must have the effect of revoking the will, if so intended by the testator. This last proposition, it seems to me, requires but little consideration after what has been already said. To place it in the strongest light for the- appellees, let us suppose that the testator, at the time of burning the codicil, expressly declared that he did it with intent thereby to revoke the will. Could it have that effect ? The will itself was in no wise can-celled or destroyed, but remained perfect and entire,! indestructible and intangible by the act in question. Then is it not obvious, that if revoked, it must have been by the sole efficacy of the testator’s parol declaration, directly in the teeth of the statute?
The argument of the appellees’ counsel is, that the question of revocation is in some degree a question of intention,- and the act of cancellation or destruction an equivocal act, which must be done with an intention to revoke; and therefore, that though a partial cancellation or destruction is prima facie a partial revocation,, yet by the intent of the party it may be extended to a total revocation. The premises are true, but do not warrant the conclusion. The intent to revoke must concur with.the act of revocation, but Cannot go beyond it, being limited by law to the act itself. We must not confound the intent to do the physical act of cancellation, or destruction, with the. intent, to produce thereby the legal effect of revocation. When the intent to do the physical act concurs with the act itself, it then becomes an act of revocation ; and when the intent to revoke concurs with the act of revocation, it then becomes *383 a legal revocation. When the concurring physical act . ... ° 1 J and intent to do it are partial only, we have merely a partial act of revocation, and, as regards that act, the testator designs to do no more; and thus the question is presented, whether a partial act of revocation can accomplish a total revocation ? a question which is answered by merely stating it.
In this view of the subject, it avails the learned counsel nothing to prove, from reason or authority, that a codicil is to be taken as a part of the will j for still it is a case of partial revocation. The argument is, however, stronger against total revocation, where the act of cancellation or destruction is applied to the codicil, than where it is applied to a part only of the will; for the part of the will cancelled or obliterated may be essential to the validity of the rest, which can never be as regards the codicil relatively to the will. The codicil is a part of the will for construction and testamentary disposition, but not for execution, nor for revocation, when that is applied to the codicil. It is a branch not essential to the existence of the tree, but which can have itself no distinct vitality.
In my opinion, therefore, the instruction in question violates both the letter and the spirit of the statute, and is fraught with all the evils of parol revocations. There can be no stronger illustration of the mischievous effects of such a doctrine than is furnished by this very case, which was made to turn upon the hearsay testimonj' of two witnesses to prove admissions, by one of the devisees, of expressions used by the testator, which derive their whole force from the very looseness of the terms employed.
The attempt to sustain this doctrine by authority has completely failed. No case has been produced in which it has been held that a revocation of a codicil, with whatever intent or in whatever mode, has operated as a revocation of the will. The case cited of *384 Utterson v. Utterson, 3 Ves. & Beam. 122. it seems to . . . me is not in point. There a father, after having made his will, being displeased with his son, by an interlineation of his will excluded him from all share in his proPefty but one shilling, and also by a codicil, made for that purpose, declared his determination to the same effect; but afterwards being reconciled to his son, the testator cancelled the codicil by drawing his pen across it, but the interlineation was left standing in the will: and it was held that the cancellation of the codicil had the effect of cancelling the interlineation. The obvious principle of this decision, I think, is, that the interlineation and the codicil were parts of the same transaction, and to be regarded as an entire act for the same identical purpose ; and that the revocation of the codicil was as much a revocation of the interlineation, as the revocation of a will is of its counterpart.
Another instruction given by the court on the trial of the issue was, that if the jury believed from the evidence, that the testator directed the will to be destroyed, and thought that it was destroyed as requested, then the will, so far as it related to the personal estate, was revoked in law, although it might not in point of fact have been destroyed. As this instruction, if erroneous, ought not to be repeated on another trial of the issue, I think it proper to express my opinion upon it. The proposition which in its broad terms it announces, is, that if the testator directed the will to be destroyed, whether inprcesenti or in futuro, and whether the will was present or absent at the time, and believed, whether then or at a subsequent period, that it was destroyed, then the will, as relates to the personal estate, was revoked, though not in point of fact destroyed. I need not consider the proposition thus stated, as I do not believe the court intended to be so understood, and as the counsel for the appellees have chosen to construe the instruction in reference to the instructions which had already been *385 given on the motion of the defendants, and to the evidence on the trial. Passing by any objection founded on an apparent clashing of the instructions, or an ambiguous hypothesis of the facts, let us suppose that the court had in its contemplation the undisputed facts disclosed by the evidence; to wit, that the will was not present at the time of the destruction of the codicil, but in a different custody ; that the destruction directed by the testator was inyrrmsenti; and that if the direction extended to the will, it was under a misapprehension on his part, not occasioned by any fraud or mistake of the person directed, that the will was actually present. Let us further suppose that there was evidence tending to prove that the direction, under such misapprehension, extended to the will as well as the codicil. Then the case presented is that of a destruction of a codicil in the testator’s presence and by his direction, and a further direction at the same time to destroy the will together with the codicil, under a mistaken belief of the testator that the will was then actually present. The instruction concedes that the will was not revoked as to the realty, and the question is whether it was revoked as to the personalty. I waive the enquiry whether the act of 1835, placing wills of personal property on the same footing as wills of real estate in regard to authentication, is to be consequently construed as placing them on the same footing in regard to revocation. Let the negative be conceded. Still we have a statute of long standing, taken from the english statute of frauds, prohibiting parol revocations of wills of personalty. Of what avail then was the parol direction to destroy the will, when in fact it was not destroyed, and moreover could not at that time have been destroyed ? There is nothing more certain than that a direction to cancel or destroy a will, if it be not complied with, is not a cancellation or destruction. Revocation by cancellation or destruction, equally applicable to wills of personalty *386 and realty, is recognized by the english statute of frauds, . ..... . ... and our statute ot wills, in regard to revocations oí devises of real estate. And in the language of Coleridge, J. in Reed v. Harris, 33 Eng. Com. Law Rep. 61. “ the kid o*" construction which has been insisted upon would lead to a repeal of the statute on this subject, step by step. The statute, for wise purposes, does not leave the fact of cancellation to depend on mere intent, but requires definite acts. In the making of a will, if the proper signatures were not affixed, no explanation of the want of signatures could be received; and so where a will has been made, to revoke it there must be some act coupled with the intention, to bring the case within the sixth section.” The learned judge of course refers to the acts of cancellation or destruction mentioned in the 6th section of the english statute. The counsel for the appellees, however, contend that the statute prohibiting verbal revocations, that is to say, requiring revocations by words to be in writing, does not apply to acts evidencing an intention to revoke, though falling short of cancellation or destruction. There is no argument for this, founded in reason or policy ; and no. authority that I am apprized of. The cases cited do . not warrant the proposition. That of Walcott v. Ochterlony, 6 Eng. Ecc. Rep. 398. was one of written directions to destroy a will, which were treated as an actual revocation in writing. Reed v. Harris, 35 Eng. Com. Law Rep. 301. was a case of copyhold, which was held not to be within the statute of frauds, and therefore the will liable to revocation, as at common law, by words of present revocation, or acts equivalent thereto.
And here again this case strongly illustrates the danger of parol revocations of wills. This part of the case was made to turn upon the testator’s unfounded belief, supposed- to be proved by the hearsay evidence of loose expressions above alluded to, that the will was *387 actually present at the time, so as to connect that belief, and the inferred direction in relation to the will, with the burning of the codicil. If we were to lose sight of the legal barriers, that is to say, the solemn forms and decisive acts prescribed by law, what security could we have against the corruptions, and blunders, and inaccuracies of witnesses in relation to the testamentary dispositions of estates ?
Without considering the objection made by the appellants’ counsel to the evidence, given without opposition on the trial, of the admissions made by mr. Mason, one of the devisees, in regard to statements of the testator in conversation with him, I am of opinion that the judge of the circuit court, sitting as chancellor, ought not to have been satisfied with the verdict of the jury, because of the misdirections above stated; and therefore that the decree ought to be reversed, and the cause remanded.
It remains to enquire what further proceedings ought to be had in the cause. The appellants’ counsel contend that the bill should be dismissed, on two distinct grounds. One is that the bill does not state such facts as, admitting them to be true, are sufficient in law 1o make the will invalid; it merely, by a sweeping allegation, charging that the paper propounded is not the last will and testament of the alleged testator. My present impression is that this objection could only be properly taken by a demurrer to the bill; but I will briefly consider it upon its merits.
The question of devisavit vel non is a common law question, and in Virginia most usually a mere question of probat. After a will has been admitted to record, it cannot, with us, be controverted incidentally; as it frequently is in the english common law courts, and sometimes (through the intervention of a jury) in their court of chancery, in consequence of the want of a court of probat in relation to wills of real estate. The *388 sentence of our courts of probat cannot be drawn in . . . question, unless in an appellate forum, except in the mode prescribed by our statute of wills, 1 R. C. p. 378. § 13. which provides, “ thát when any will shall be exhibited t0 be proved, the court having jurisdiction may proceed immediately to receive the probat thereof, and grant a certificate of such probat. If, however, any person interested shall within seven years afterwards appear, and by his or her bill in chancery contest the validity of the will, an issue shall be made up whether the writing produced be the will of the testator or testatrix or not, which shall be tried by a jury, whose verdict shall be final between the parties; saving to the court a power of granting a new trial for good cause, as in other trials : but no such party appearing within that time, the probat shall be forever binding;” with a saving in favour of persons labouring under disabilities. The 14th section also provides, that “in all such trials by jury, the certificate of the oath of the witnesses at the time of the first probat shall be admitted as evidence, to have such weight as the jury shall think it deserves.” Thus the statute provides a supplemental tribunal to revise the decision of the court of probat, if in favour of the will; and that tribunal is a jury, to be impannelled for trial of the issue of devisavit vel non, to be directed by a court of chancery. The jurisdiction, such as it is, so conferred on the chancery courts is no part of the original jurisdiction of the courts of equity, which will not, (in the language of the books) in an adversary way, take jurisdiction to determine the validity of a will. It is a probat jurisdiction, to be exercised not by the chancellor, but by the jury; and his only province is to convene the proper parties, and cause the prescribed issue to be made up and tried, with the incidental power to grant a new trial, and to remove impediments and furnish facilities to a full and fair trial of the merits before the jury. The issue is *389 directed by the mandate of the law, in order to the final , . , probat of the will propounded; and not to inform the conscience of the chancellor, whose conscience is not ... . . at all concerned in the matter, except to prevent mjustice from being done by the verdict of the jury. The issue is not that made up by the bill, answer and other pleadings in the chancery proceeding, but is a new and separate issue, which, when drawn into technical form, is the result of feigned pleadings in a supposed action at law. The issue covers the whole ground (at least so far as required by the parties) whether the paper propounded is the last will and testament of the testator or not. When the jury are impannelled upon the issue, the parties are then in a legal forum, which looks only to the question that the jury have been sworn to try, without regard to the chancery pleadings. Those pleadings cannot enlarge or contract the issue before the jury, nor the evidence adduced at the trial. Of what avail then would it be, to require the chancery pleadings to be ramified into details of the facts that are to be the subject of evidence on the trial before the jury ? No such unprofitable controversy is required at the first probat, and why should it be at the last ? It could not have been contemplated by the statute, the object of which was to allow an opportunity “to contest” the validity of the will, to all who had not enjoyed it in the court of probat, where the propounding was usually ex parte; and to allow it, not in a more formal, but a more substantial manner, the probat court not having the power to convene the necessary parties, and trying the case itself without the aid of a jury, supposed by our law to be a more competent tribunal for the decision of such matters. The legislative mind has since been more fully developed by the act of 1838, which, by a happy expedient, authorizes the whole controversy, at the election of the propounder of the will, to be finally adjudicated in an original court of probat; *390 which is clothed with the same powers of convening the parties, directing the issue, granting new trials &c. as are vested in the chancery court by the original statute of wills j and without any formality of plead it be the fictitious or supposed common law pleading, employed, or conjectured, to raise the broad issue of devisavit vel non. No inconvenience is felt in this mode of proceeding, from the want of schedules of controverted facts, in the form of bills and answers, which serve rather to perplex than elucidate the cause, by multiplying subordinate and irrelevant issues. Upon the whole, I cannot perceive the propriety of requiring the plaintiff to do more in his bill, (besides shewing his interest in the subject and making the necessary parties) than to “contest the validity of the will,” by averring in general terms that it is not the last will and testament of the alleged testator, or, at his election, by a brief statement of bis grounds of objection thereto, the briefer the better upon a mixed question of law and fact, which it is not the province of the court to separate, and which must be submitted in general terms to the decision of the jury.
It only remains for me to notice the other objection to the bill, that some of the plaintiffs, by accepting their legacies and devises under the will, have precluded themselves from disputing its validity, and that the other plaintiffs, having joined with them those so precluded, are not entitled to sue. This objection comes loo late (Dickenson v. Davis &c. 2 Leigh 407.) not having been made by plea, nor even relied upou as a bar by way of answer. But it could have availed nothing in any form ; the correct rule, as I conceive, being that of the ecclesiastical courts, that the acquiescence of the next of kin in the grant of a probat in common form (which corresponds with our ex parte probat), even though they receive legacies as due them under the will, does not preclude them from calling for proof in *391 solemn form (which is analogous to our final probat under the issue of devisavit vel non), unless under peculiar circumstances, and laches by long acquiescence. 1 Williams on Ex’ors 193. With us, no laches can be imputed to those who come within the period prescribed by law.
My opinion therefore is, that if the cause be remanded, it should be with directions to set aside the verdict of the jury, and award a new trial of the issue, on which new trial the instructions given at the former trial on the motion of the plaintiffs are not to be repeated.
The other judges concurring, the opinion of the court of appeals was declared to be, that the instructions given by the circuit court to the jury, upon the motion of the appellees, on the trial of the issue of devisavit vel non, were erroneous; and therefore that the judge of that court, sitting as chancellor, ought not to have been satisfied with the verdict of the jury. The decree was reversed with costs, and the cause remanded to the circuit court, with directions to award a new trial of the issue, on which new trial the instructions aforesaid were not to be repeated.