[No. 19442.  In Bank.—June 5, 1896.]

## W. R. WIGGINS, APPELLANT, *v.* MUSCUPIABE LAND AND WATER COMPANY, RESPONDENT.

WATER RIGHTS—DIVISION OF FLOW BETWEEN RIPARIAN OWNERS—PERIODS OF TIME—DIMINUTION OF STREAM.—A court of equity may apportion the flow of water in a stream to the respective riparian owners by periods of time rather than by a division of the quantity, so that each may have the full flow of the stream during such designated periods, instead of a portion of the flow during all the time, when the circumstances are such that a division by periods of time would better conserve the rights of all the riparian owners; and such division should be made where the stream, instead of increasing toward the sea, diminishes until it finally disappears or ceases to have any appreciable volume.

ID.—APPORTIONMENT FOR DOMESTIC USE—IRRIGATION—DIFFERENT PERIODS.—It cannot be said as matter of law that a lower riparian proprietor has a necessity for a continuous flow of water for domestic uses, any more than for the purpose of irrigation; but he is only entitled to a reasonable use for either purpose, and the court has power to apportion the water by periods of time for all uses, though it would naturally fix a different length of periods during which each should be entitled to the flow with greater frequency of recurrence, where the water is needed for domestic uses, than if it were used for purposes of irrigation only.

ID.—EQUITABLE DIVISION—FINDINGS—APPEAL FROM JUDGMENT—ABSENCE OF EVIDENCE—PRESUMPTION.—Where the court has found that a specified division of a flow of a stream between riparian owners by periods of time is reasonable and equitable under all the circumstances and facts in the case, and the evidence is not brought up upon appeal from the judgment, it must be presumed upon such appeal that the findings were sustained by the evidence, and that the court gave proper con-

sideration to all of the evidence before it, and to all of the uses for which it was shown that the water was available.

Id.—Division of Flow for Irrigation—Measure of Riparian Rights. The quantity of land actually cultivated, or the amount of water actually used, is not the measure of the rights of a riparian owner; and in making an equitable division of the flow of a stream between riparian owners, controlling regard should be had to the amount of irrigable land belonging to each party, rather than to the amount of land already under cultivation.

Id.—Loss of Water by Absorption—Allowance to Upper Proprietor —Artificial Delivery to Lower Owner.—Where one hundred inches of water is naturally lost by absorption and evaporation in passing through its natural channel from the dam and ditch of an upper riparian owner, to the land of a lower owner, a court of equity, in dividing the flow of the stream between them, may allow the upper owner to provide artificial means for carryng all of the waters of the stream in excess of said one hundred inches to the lands of the lower owner, and may permit the upper owner to use so much of said one hundred inches as he can save by such artificial means.

Appeal from a judgment of the Superior Court of San Bernardino County. Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

*Waters & Shoup,* for Appellant.

The conclusions of law and the judgment thereon are not warranted by the findings of fact, because the findings show that appellant had of his riparian land about eighty-five acres in actual cultivation and under irrigation from the stream in question, while respondent had only about thirteen acres; and there is nothing in the findings to show that respondent intends in the future to irrigate or cultivate any greater area of its premises. During such time as that there is sufficient water to supply the needs of all the riparian owners on the stream, such owners are entitled to a reasonable use of the water. (*Lux* v. *Haggin,* 69 Cal. 397–400; Gould on Waters, sec. 217.) The court has decreed that the periods of distribution shall begin April 1st of each year, whereas the findings show that the irrigating season begins on June 1st of each year, and the decree by its terms only allows appellant eight days' flow or six days' actual use during the irrigating season, from June 1st to September 10th,

and none at all if the flow of the stream falls below one hundred inches. (*Stanford* v. *Felt,* 71 Cal. 249.) The judgment makes no provision whatever for the use of water by either of the riparian proprietors for domestic purposes. (*Stanford* v. *Felt, supra; Alta etc. Co.* v. *Hancock,* 85 Cal. 230; 20 Am. St. Rep. 217.) The provision of the judgment giving to respondent the option of carrying to the northerly line of the thousand acres—Wiggins' tract—without diminution, all of the waters of said creek in excess of one hundred miner's inches, which shall at any time be flowing at the point where said creek enters said land, is unwarranted. This option is not the subject matter of, nor mentioned in, the pleadings, and there is nothing to show that respondent has begun the making of an aqueduct, or intends ever to make any in which to carry the stream to the Wiggins line. The apportionment made of the use of the stream into turns, instead of by a division of its quantity, takes away from the lower proprietor all use of the stream.

*W. P. Gardiner,* for Respondent.

The actual cultivation of the respective lands at any one time cannot form a basis for the adjudication of the permanent rights of the respective parties. The decree does not ignore or deny the use of the water for culinary or domestic purposes. It simply determines the extent of the use, and does not fix the character. Had appellant desired this court to adjudicate, upon a consideration of the judgment-roll only, that he was entitled to any particular amount of water for domestic purposes, he should have brought to it such allegations of a complaint and such findings of fact as to enable it to determine that he was entitled to some particular quantity of water for such purposes, or at least that he claimed some specific quantity, and that the trial court adjudged that he should not use the water to which he is entitled for those particular purposes. Courts of equity have power to regulate the use of riparian

waters as between the different riparian owners by periods of time, and to award each owner the exclusive use of the entire stream for his particular period. (*Harris* v. *Harrison*, 93 Cal. 679; *Lux* v. *Haggin*, 69 Cal. 394; *Merced Min. Co.* v. *Fremont*, 7 Cal. 326; 68 Am. Dec. 262; *Frey* v. *Lowden*, 70 Cal. 550; *Anaheim etc. Co.* v. *Semi-Tropic etc. Co.*, 64 Cal. 197; Pomeroy on Riparian Rights, sec. 514; *Cave* v. *Crafts*, 53 Cal. 135; *Lytle Creek Water Co.* v. *Perdew*, 65 Cal. 447.) The doctrine of common law with reference to riparian waters has never been adopted by California, except so far as that law is reasonably applicable to the peculiar property conditions of this state. (Kinney on Irrigation, 153; *Pennock's Estate*, 20 Pa. St. 268; 59 Am. Dec. 718; *Wixson* v. *Devine*, 80 Cal. 387.)

HARRISON, J.—The plaintiff is the owner of a rectangular tract of land, having an area of one thousand acres, lying to the south and west of a larger tract belonging to the defendant, Muscupiabe Land and Water Company, and through both of these tracts of land there flows a stream of water known by the name of Devil Canyon creek. This stream has its source in the mountains north of the defendant's tract, and flows through the canyon in a southerly direction, and thence southerly and southeasterly through the defendant's tract of land to the north line of the plaintiff's tract, which it crosses in a southeasterly direction and again enters the defendant's tract. The length of its course through the defendant's land before it reaches the plaintiff's land is fifteen thousand five hundred and seventy feet, and its course southeasterly across the plaintiff's land is three thousand two hundred feet in length, when it again enters the land of the defendant, through which it flows for thirteen thousand four hundred and fifty feet. Of the lands of the plaintiff only the northerly two hundred and forty-five acres are within the watershed of this stream and riparian thereto. With irrigation this land can be made productive, but without irrigation it is

dry and practically useless.  The land of the defendant, which lies to the north of the plaintiff's land, adjacent to and bordering upon the stream, is rough, rocky, sandy, and worthless; and for the first four thousand feet south of the place where the stream enters this land is not susceptible of cultivation.  Below this point, and at a short distance to the eastward of the stream, a portion of the defendant's land—about twelve hundred acres in extent, lying north of a prolongation of the north line of the plaintiff's tract—is within the watershed of the stream, and, if irrigated from the stream, may be made productive.  In July, 1891, the defendant diverted upon this land all the waters of the stream above the plaintiff's tract, and thereupon the plaintiff commenced the present action for the damages sustained thereby, and to enjoin the defendant from any further interference with the flow of the stream.  The cause was tried by the court, which found, in addition to the foregoing facts, the following:

"22. The most valuable use to which the water of said stream can be put is that of irrigation.  The portion thereof that would be required for domestic and culinary purposes and for watering stock would not perceptibly diminish the volume of water flowing in the stream when there is sufficient therein to be available for irrigation."

"23. The bed of said stream is sandy and porous, and the air in that locality is, during the irrigating season, dry and hot.  The quantity of water usually flowing in the stream varies greatly in different years, and in different seasons of the same year, and considerably in different portions of the day, there being more flowing at night than in the daytime.  The usual irrigating season lasts from June 1st to October 1st.  During the winter season, and when the water is not wanted for irrigation, there is more water flowing therein than is needed or can be used by the riparian owners.  After the water enters the lands of the Muscupiabe Land and Water Company a large portion thereof

is lost by evaporation and by absorption before it reaches the one thousand acre tract of said Wiggins. The flow of the stream also greatly diminishes from the end of the rainy season until about August 15th of each year."

"24. In a season of average rainfall, when there is no diversion of the water of said stream, the usual flow of the water therein at the point where it enters the land of said Muscupiabe Land and Water Company, and at the point where it enters the land of Wiggins, computed in miner's inches, measured under a four inch pressure, is as follows: 'From July 1st to July 15th: At the north line of said company's land, one hundred and fifty inches; at the north line of Wiggins' place, fifty inches. From July 15th to September 10th: At the north line of said company's land, one hundred inches; at the north line of Wiggins' place, none. From September 10th to October 1st: At the north line of said company's land, one hundred and fifty inches; at the north line of Wiggins' place, fifty inches. When there is no more than one hundred inches at the point where said stream enters the land of said company, the same is all taken up by evaporation and absorption, so that none of it reaches the one thousand acre tract of said Wiggins.' "

"25. The said Muscupiabe Land and Water Company has constructed and now maintains a dam across the said stream, and a ditch leading therefrom onto the land of the company aforesaid sufficient in size to carry all the waters of said stream. When during the irrigating season the water of said stream is all diverted in said ditch, until the bed thereof below the said dam becomes dry and the water is afterward turned again down and allowed to flow in said stream uninterrupted, it requires two days' flow before any of it will reach the one thousand acre tract of Wiggins, owing to the absorption of water by the creek-bed and the evaporation by the heat and dryness of the air, and the said stream does not attain its full flow at the north line of Wiggins' tract until about five days after it is so returned to said stream."

"26. If the said stream were divided by quantity at the dam of said company, and the proper proportion in quantity which would be due to each of said riparian owners for his reasonable use thereof was allowed to flow in separate streams to each, the amount allowed to said Wiggins would be so small that none of it would ever reach his land."

"27. The amount of water required to irrigate such of the lands of the said company, and of said Wiggins, as is properly susceptible of irrigation, is the equivalent of a constant flow of one miner's inch, measured under a four-inch pressure, to each five acres of said land."

"28. Under all the circumstances and facts in this case, a reasonable and equitable division of said water between the said Muscupiabe Land and Water Company and the said Wiggins would be to allow to the said Wiggins the full flow of the stream, uninterrupted and continuously, for eight days out of each forty days, beginning April 1st of each year, upon said one thousand acre tract, and to allow to the said Muscupiabe Land and Water Company the full flow of the stream during the remaining portion of each period of forty days; provided that, when there are no more than one hundred miner's inches of water, measured under a four-inch pressure, flowing in said stream at the point where it enters the land of the said Muscupiabe Land and Water Company, the said company should be allowed to divert all the water of said stream, and to continue so to divert the same until there are more than one hundred inches aforesaid flowing at said point."

The conclusions of law and the judgment thereon follow substantially the twenty-eighth finding, and by the judgment the plaintiff is enjoined from diverting the water of the stream for use upon any portion of his thousand acre tract, except the northerly two hundred and forty-five acres thereof, and the defendant is enjoined from diverting the waters of the stream for use anywhere, except upon its land lying to the north of a line drawn in prolongation of the north boundary of the

plaintiff's tract.   From the judgment thus rendered the
plaintiff has appealed, bringing the appeal here upon
the judgment-roll alone, without any bill of exceptions,
and urges in support of his appeal that the findings of
fact are insufficient to sustain or justify the judgment.

One of the grounds for a reversal urged by the appel-
lant is that the judgment fails to provide for his right
to use the waters of the stream for culinary or domestic
purposes.   The claim that this right is denied by the
judgment is not sustained by the record.   The judg-
ment makes no limitation upon the use to which the
water shall be applied by either of the parties, except
that it shall not be used upon land which is not riparian
to the stream.   The principle contended for by the ap-
pellant is that the court had no authority to render a
judgment by which he would be prevented from a con-
tinual flow of the stream for these purposes, and al-
though he has cited expressions from some opinions in
support of this contention, an examination of the cases
in which they occur fails to sustain the principle in-
voked by him.   The opinion of Mr. Justice Thornton
in *Stanford* v. *Felt,* 71 Cal. 253, was not concurred in by
any of the other justices; and in *Alta Irrigation Co.* v.
*Hancock,* 85 Cal. 219; 20 Am. St. Rep. 217, it was held
that the plaintiff had no interest in the waters of the
stream, and, consequently, the use to which the water
might be applied by either party was not before the
court for consideration.   By the common law a distinc-
tion was recognized between the right of a riparian
owner to the ordinary use of the water for supplying his
natural wants for domestic uses and for cattle, and the
right to its use for his artificial wants, such as pleasure
grounds, manufacturing, etc., and although in the exer-
cise of this right the superior proprietor might make any
reasonable use of the flow of the stream for all domestic
purposes, irrespective of any diminution caused thereby
to the injury of an inferior proprietor, he could not exer-
cise the right for any extraordinary use that would
interfere with the rights of the inferior proprietors, or

interrupt the regular flow of the stream, if thereby he interfered with its lawful use by them. (*Miner* v. *Gilmour*, 12 Moore P. C. C. 156; *Wadsworth* v. *Tillottson*, 15 Conn. 366; 39 Am. Dec. 391.)

The power of a court of equity to apportion the flow of water in a stream to the respective riparian owners, by periods of time rather than by a division of its quantity, so that each may have the full flow of the stream during such designated periods, instead of a portion of the flow during all the time, when the circumstances are such that a division in this manner would better conserve the rights of all the riparian owners, was fully considered and established in *Harris* v. *Harrison*, 93 Cal. 676. It was said in that case: "According to the common-law doctrine of riparian ownership, as generally declared in England and in most American states, upon the facts in the case at bar, plaintiffs would be entitled to have the waters of Harrison canyon continue to flow to and upon their land, as they were naturally accustomed to flow, without any substantial deterioration in quality or diminution in quantity; but in some of the western and southwestern states and territories, where the year is divided into one wet and one dry season, and irrigation is necessary to successful cultivation of the soil, the doctrine of riparian ownership has by judicial decision been modified, or rather enlarged, so as to include the reasonable use of natural water for irrigating the riparian land, although such use may appreciably diminish the flow down to the lower riparian proprietor, and this must be taken to be the established rule in California, at least where irrigation is thus necessary." In an arid country, water for irrigation may become a natural want of man, as exigent as when needed for domestic purposes, since without it vegetation would cease, and the sources of life be indirectly destroyed. (See *Evans* v. *Merriweather*, 3 Scam. 496; 38 Am. Dec. 106.) When, as in the present case, a stream, instead of increasing as it goes towards the sea, constantly diminishes, until it finally disappears or

ceases to have any appreciable volume, it is very evident that its beneficial use can be regulated better by periods of time rather than by a division of its quantity. A perpetual use of the water by all of the proprietors would be impracticable, for the reason that a perpetual use by the upper proprietor would, during a large portion of the year, entirely deprive the lower proprietor of any flow, and a just protection of the rights of both is best effected by its division in periods of time. In *Harris* v. *Harrison, supra,* the plaintiff claimed in his complaint the right to divert the waters of the stream for domestic uses as well as irrigation, but the power of the court to apportion the water for purposes of irrigation was the point chiefly presented and considered in the opinion of the court. The same principles, however, which authorize an apportionment of the flow by periods of time for purposes of irrigation, justify such apportionment for domestic uses. The use to which different proprietors may apply the waters of the stream which flows through their lands is not the foundation of their right to the flow of the stream, nor is the owner's right to the flow of the stream governed by the uses to which the water may be applied, but it is a right annexed to the land, and a part thereof, and is an inherent element of the property which he has in the land itself. This right in each proprietor is, however, relative to the rights of the other riparian proprietors, and is to be exercised with proper regard to those rights.

The evidence before the superior court has not been brought before us, and we must assume, not only that the findings of fact made by that court were sustained by the evidence, but also that the findings which were made contain all the facts which the evidence before the court authorized it to make. As the appellant must show that the court below has committed error, it was incumbent upon him, if he would controvert the correctness of its judgment by reason of its failure to make suitable provision for his domestic needs, to show that he offered evidence upon this issue, and that the court

failed to give due consideration to this evidence. By invoking the aid of a court of equity to protect him in his rights, he binds himself to recognize and observe the rights which the court may determine are held by others in the same subject matter; and, if he would question the judgment of the court upon these relative rights, he must show that he presented to the court evidence of the rights which he claims the court has failed to protect. Not only does the record fail to disclose that any evidence was offered by the appellant tending to show that he requires any water for domestic uses, but the finding of the court that his tract of land without irrigation is dry and practically useless tends to destroy his claim for such uses. In the absence of the evidence we must hold that, in its allotment of the amount of water to be given to each party, the court took into consideration all of the uses for which it was shown that the water was available, domestic uses as well as irrigation; that it considered the rights of the respective claimants, as well in view of the purposes for which the water was required, as of the amount of water available for such purposes. The finding of the court that the only way to provide for a reasonable use of the water is to divide its flow by periods of time, as well as its finding of the specific periods which, " under all the circumstances and facts in this case," would be a reasonable and equitable division of the water, must be held to be justified by the evidence, and to provide for all the uses to which either proprietor is entitled to apply the water. It cannot be said, as a matter of law, that the inferior proprietor has a necessity for a continuous flow for domestic purposes, any more than for purposes of irrigation. In either case he is entitled to only a reasonable use, and what is a reasonable use is a question of fact, depending upon all the circumstances appearing in each case. If neither of the proprietors has any use for the water, other than for domestic purposes, a court would naturally fix the length of the periods during which each should be entitled to the flow, as well as the

frequency of their recurrence, different from what it would if the waters of the stream were used for irrigation; but whenever it should appear from the circumstances of the case that the only method by which either proprietor could have a reasonable use of the stream would be to allow to each its full flow for a reasonable time, the only equitable adjustment of their rights would be to thus apportion the flow. Whether this apportionment should be for alternate weeks or alternate days, or for a specific portion of each day, must be determined by the facts of each case, and, in the absence of the evidence of these facts, the action of the trial court must be held to be correct.

The record does not disclose the amount of water flowing in the stream at any other dates than between the 1st of July and the 1st of October, or that there is at any time a flow of more than one hundred and fifty inches at the point where it enters the land of the defendant; and, although it may be assumed that the loss by absorption and evaporation is greater during the summer than in the winter, the only finding upon this point is that when there is no more than one hundred inches at the point where the stream enters the land of the defendant, the same is all taken up by evaporation and absorption, so that none of it reaches the thousand acre tract of the plaintiff, and that in a season of average rainfall this is the actual loss between July 1st and October 1st. The loss by absorption and evaporation is so great that, without any consumption by the defendant, for any purposes, only fifty inches would reach the land of the plaintiff at any portion of this period. How much of this fifty inches is consumed or required by the defendant for domestic purposes or natural wants is not shown, but it is consistent with the findings of the court to assume that it appeared from the evidence before it that the necessities of the superior proprietor for domestic uses were such that by giving him the right to a continuous flow none of the water would reach the land of the plaintiff during the irrigating season.

It is very evident from the record that the cause was tried with reference to the rights of the respective parties to the water for purposes of irrigation, and that the right to the water for domestic purposes was not considered an issue in the case, or made a subject of controversy at the trial. Although in his complaint the plaintiff alleged in general terms his right to the waters of the stream " for the irrigation of said land, and for culinary and domestic purposes," his specific allegations that during the irrigating season "no more water reaches his land than is required for irrigating the cultivated portion thereof," and that he has no other source of irrigating the cultivated portion of his tract than from the waters of the stream, and the further al. legation that the damage which would be sustained by him in consequence of a diversion of the waters by the defendant, and for which he sought the aid of the court, was the destruction of the fruit trees, and vines, and alfalfa, growing on the land, justify the conclusion that the right to divert the waters for irrigation was the only issue presented to the court. The finding of the court that the most valuable uses to which the water of the stream can be put is that of irrigation, and its further finding that when there is sufficient water in the stream to be available for irrigation, the portion that would be required for domestic and culinary purposes would not perceptibly diminish its value, corroborate this conclusion.

It is further contended by the appellant that, inasmuch as the court finds that he has cultivated eighty-five acres of his irrigable land, and that the respondent has cultivated only thirteen acres of its irrigable land, and, as it does not appear that the respondent intends in the future to irrigate or cultivate any greater area, the judgment should not have given the defendant the use of the greater portion of the water. The right of a riparian owner to the use of the water is not, however, measured by the amount which he actually uses, and it is not to be assumed that the same amount of land will be culti-

vated in every succeeding year. The amount of irrigable land belonging to each party, rather than the amount of land already under cultivation, would be properly made a controlling element in adjusting their respective rights to the flow of the stream; otherwise, a readjustment would be necessary whenever either party should cultivate a greater or less area. The finding of the court that "the only method by which the plaintiff can be given the reasonable use of said stream is to divide the flow of the stream by time, and allow him the full flow of the stream during such time as may be reasonable," furnishes the principle upon which this portion of the judgment rests; and the further finding that " the amount of water required to irrigate such lands of the defendant and of the plaintiff as are properly susceptible of irrigation is the equivalent of a constant flow of one miner's inch, measured under a four-inch pressure, to each five acres of said land," gives the basis for the application of the principle in behalf of the respective parties. The judgment protects the plaintiff against any waste or unnecessary diversion by the defendant in case it shall not cultivate its land, or only a small portion thereof, by the provision that when it shall not · actually use all or any portion of said waters upon its irrigable land the plaintiff shall be entitled to use the same.

The appellant also objects to that portion of the judgment which provides that the defendant may provide means for carrying to the north line of the plaintiff's land, without diminution, all of the waters of the stream in excess of one hundred inches which shall at any time be flowing at the point where the stream enters the land of the defendant, and that, if it shall elect to do so, it shall have the right, at any of the times during which the plaintiff is by the judgment entitled to the use of the waters of the stream, to deliver said excess to the plaintiff at the northerly line of his tract, and that, if it shall so deliver said excess to the plaintiff during the time it shall make such delivery, it shall have the right

to appropriate to its own use the said one hundred inches. This provision in the judgment is based upon the finding that one hundred inches of the water of the stream is lost by absorption and evaporation between the time that the stream enters the land of the defendant and before it reaches that of the plaintiff, and accords with the simplest principles of equity in the adjustment of the respective rights to the waters of the stream. The plaintiff could under no circumstances be entitled to the use of more water than would reach his land by the natural flow of the stream, and, if he receives this flow upon his land, it is immaterial to him whether it is received by means of the natural course of the stream or by artificial means. On the other hand, if the defendant is enabled by artificial means to give to the plaintiff all of the water he is entitled to receive, no reason can be assigned why it should not be permitted to divert from the stream where it enters its land and preserve and utilize the one hundred inches which would otherwise be lost by absorption and evaporation.

The judgment is affirmed.

McFARLAND, J., GAROUTTE, J., VAN FLEET, J., TEMPLE, J., and HENSHAW, J., concurred.