Argued October 30, decided December 26, 1911.

## McCOY *v.* HUNTLEY.

[119 Pac. 481.]

WATERS—IRRIGATION—ADVERSE USE.

1. Where defendant never did any act which notified plaintiffs or their grantees that he intended to claim a right to constantly divert the

waters of the stream or deny their right to use the same share that they had previously employed while defendant's grantor occupied the land, limitations would not attach in favor of defendant's claim to the use of all the water from the fact that at times defendant used all the water, such being his privilege, unless plaintiffs' grantors were in need of an amount equal to their diversion.

WATERS—IRRIGATION—USE OF WATER—ROTATION.

2. Since an appropriator of water for irrigation is only entitled to use so ·much as his needs require, and at the time of such requirement, if these are satisfied by use of the whole flow every other day or every other week, the court, in cases involving prior and subsequent water appropriations, may require the appropriators to alternate in the use of the water.

From Wheeler: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a suit by G. J. McCoy and H. R. McCoy against Charles Huntley to restrain defendant from diverting and using more than one-half of the waters of Pine Creek in Wheeler County. Plaintiffs, whose land adjoins that of defendant lower down the creek, claim in substance by their complaint that in 1883 William Clarno, their predecessor in interest, appropriated 30 inches, miner's measurement, of the waters of Pine Creek for the purpose of irrigating his land; that such appropriation was prior to any appropriation by defendant; that defendant, in the years 1903, 1904, 1905, and 1906, during the season of low water diverted all the water of the creek upon his own land, without plaintiffs' consent, and refused to turn back into the stream any portion of the water so diverted, but used it unnecessarily and wastefully, and suffered it to sink upon his own land, leaving plaintiffs without water for irrigation or for domestic purposes. It is alleged that one-half of the water of the creek used all the time, or all of the water used alternately week about, upon the land of plaintiffs and defendant, is sufficient for the needs of each. A preliminary injunction was issued, requiring defendant to alternate with plaintiffs in the use of the water week about until the final hearing.

The defendant answered, claiming a prior appropriation by himself and continued use by him of all the water of Pine Creek in the dry season when necessary, and denied a wrongful diversion or wasteful use. Upon the hearing, the court, after viewing the premises, found for plaintiffs and decreed to them the right to alternate week about with defendant in the use of the water, and from this decree defendant appeals. Other facts appear in the opinion.        AFFIRMED.

For appellant there was a brief with an oral argument by *Mr. Jay Bowerman.*

For respondents there was a brief over the names of *Mr. William H. Wilson* and *Mr. Hamilton H. Hendricks,* with an oral argument by *Mr. Wilson.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

It appears from the testimony that the land occupied by plaintiffs was originally settled upon about the year 1871 by Harrison Huntley, a brother of defendant, and that about the same time defendant settled upon the lands now occupied by him. While the testimony is not clear, we conclude that the first appropriation was made for the purpose of irrigating the Harrison Huntley tract, that is to say, a small portion of it, and later the land of defendant. Pine Creek, at that time, was a stream running near the level of the adjoining land, and it is probable that a portion of the land to some extent was subirrigated by the natural percolation of the waters of the stream. Later a cloud-burst or a succession of such, deepened the channel, so that the water in the stream is from 10 to 20 feet below the level of the adjoining land, and subirrigation is not possible, and irrigation by means of dams is much more difficult than when the place was first settled. For a time the two Huntleys used the same ditch, and there does not seem to have been any scarcity

of water on either place for several years. In 1879 it transpired upon survey that the land occupied by Harrison Huntley was a school section, and he conveyed his possessory right to Charles Huntley, who, on January 14, 1879, received a deed from the State to the lands now occupied by plaintiffs. In 1880 Charles Huntley conveyed a portion of this tract by warranty deed to W. Lair Hill, N. H. Gates, and Frank Clarno, and in 1882 conveyed the remainder of the tract to Hill and Gates by warranty deed. Plaintiffs deraign title from Hill, Gates, and Clarno. We do not think that the evidence indicates a prior appropriation by defendant. And as water, in the arid parts of the State, is the life of the land, we believe that Hill, Gates, and Clarno took the land in view of the visible improvements upon it, including the ditches and water facilities placed there by Harrison and Charles Huntley, and that the right to use the water, as Harrison and Charles had theretofore used it, became and was appurtenant to the land.

1. It not appearing that Charles Huntley ever did any act which notified plaintiffs or their grantees that he intended to claim the right to constantly divert and use all the waters of the stream, or to deny their right to use the same share that had been employed beneficially while he and Harrison Huntley occupied the land, the statute of limitations would not attach from the mere fact that at times defendant used all the water of the creek, since such was his privilege unless the grantors of plaintiffs were in need of it. Nor is adverse user as such specifically pleaded; the defendant making his case upon prior appropriation, which he has failed to prove.

2. We see no reason why, even in cases involving prior and subsequent appropriations of water, the courts cannot require the appropriators to alternate in the use of the water. The time when water may be used recklessly

or carelessly has passed in this State. With increasing settlement water has become too scarce and too precious to justify any but an economical use of it. An appropriator has only the right to use so much as his needs require and at the time his needs require. And if these are satisfied by a use of the whole flow every other day, or every alternate week, he ought not to be heard to complain. It is evident that from some cause or from a variety of causes the waters of Pine Creek are diminishing in volume at the point where the parties to this controversy are residing. It is now probable that to divide the water, without alternating, would injure both parties. A test, since the preliminary order was made in this case in 1906, indicates that by the method adopted both parties can raise good crops and both prosper.

It must be conceded that there is a paucity of authority on the subject of requiring rotation in the use of water between appropriators. The remedy has frequently been applied in cases of dispute between riparian proprietors, and it is difficult to discern any difference in principle between the rights of a riparian proprietor and those of an appropriator in the beneficial use of water. The trend of the later decisions is to apply this method where practicable.

In *Helphery* v. *Perrault,* 12 Idaho, 451 (86 Pac. 417), the court observes:

"Rotation in irrigation undoubtedly tends to conserve the waters of the state and to increase and enlarge their duty and service, and is, consequently, a practice that deserves encouragement in so far as it may be done within legal bounds."

In *Wiggins* v. *Muscupiabe Land & Water Co.,* 113 Cal. 182 (45 Pac. 160: 32 L. R. A. 667: 54 Am. St. Rep. 337), which is cited with approval in *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732: 98 Pac. 1083: 102 Pac. 728), the court required riparian proprietors to rotate in the use of water,

and in *Becker* v. *Marble Creek Irr. Co.*, 15 Utah, 225 (49 Pac. 892, 1119), which was a suit between appropriators, the court applied the doctrine of rotation.

The weight of evidence indicates that there is no material difference in character between the lands of plaintiffs and defendant, and, if defendant is unable to produce as good crops on his land as plaintiffs are producing with the same quantity of water upon double the acreage, it must be attributed to his methods of farming and irrigation, rather than to the lack of water.

The decree is affirmed.          ╱          AFFIRMED.

MR. JUSTICE BEAN took no part in this decision.