**HIDALGO COUNTY WATER IMPROVE-MENT DIST. NO. TWO et al. v. CAMER-ON COUNTY WATER CONTROL & IM-PROVEMENT DIST. NO. FIVE et al.**

No. 12453.

Court of Civil Appeals of Texas.
San Antonio.

July 16, 1952.

Strickland, Wilkins, Hall & Mills, Hill, Lochridge & King, Mission, Ewers, Cox & Toothaker, McAllen, Rankin, Kilgore & Cherry, Edinburg, for appellant.

942

Harbert Davenport, Sharpe, Cunningham & Garza, Brownsville, N. A. Colvin, San Benito, Johnson, Sloan, Phillips, Hester, Jenkins & Lewis, Kent, Brown & George, Harlingen, Rentfro, Rentfro & Vivier, Brownsville, for appellee.

PER CURIAM.

■ Relators have asked for writs of prohibition and injunction against O. E. Van Berg as Master in Chancery (sometimes called River Master), certain other persons and certain Water Control and Improvement Districts, and against the Judge of the 107th District Court, during the pendency of an appeal from an order of that court. The essence of their position is that the trial court's interlocutory order was essentially the appointment of a receiver or a trustee. An interlocutory order appointing a receiver may be superseded upon an appeal. Shell Petroleum Corporation v. Grays, 122 Tex. 491, 62 S.W.2d 113; Brown v. Faulk, Tex.Civ.App., 231 S.W.2d 743, 746. Relators then rely upon Article 2276a, Vernon's Ann.Civ.Stats., which exempts water improvement, water control, and water preservation districts from making a bond in the case of an appeal, and urge that this article even exempts them from making a supersedeas bond. They urge that they are given an automatic statutory supersedeas and that all acts of the trial court and his Master in Chancery, as empowered by the court, are superseded during the appeal. Herring v. Houston National Exchange Bank, 113 Tex. 264, 253 S.W. 813. They urge that the suit is a receivership with an incidental injunction, in which event the injunction also is superseded. Brown v. Faulk, Tex.Civ.App., 231 S.W.2d 743, 746.

A separate contention is also made that the perfection of the appeal deprives the trial court of all further control of the phase of the case before us and that unless prohibited the trial court might take further action or enter further orders in the case, which would interfere with the effective exercise of the jurisdiction of this Court.

The trial court's order states the facts of this case. There is not enough water in the lower Rio Grande. More than 250,000 people, their crops and livestock suffer from a drought. Drains upon the river have been so great that the water supply grows increasingly less as the river approaches the Gulf. The decree recognizes that all parties; including others in the same class, are entitled to their respective correlative shares of the normal flow of the Rio Grande. Since 1948, by reason of the erection of dams on both American and Mexican tributaries to the river, a water shortage has existed; but it has been coped with under a voluntary agreement of all users. Since January of 1952, the shortage has been so severe that voluntary inhibitions and self-control have broken down. The result has been that those on the higher reaches of the river have used water and those along the lower reaches in some instances have received none at all. The court found that some of the riparian owners, though legally entitled to a share of the water, have received nothing. The order recites further that some persons, including the City of Brownsville, are in grave danger of such shortage that the minimum drinking, health and sanitation needs will not be supplied.

The order further finds that though all are entitled to equal apportionment, that since April 5th not even voluntary control has been successful, and that upper riparian diverters, since March 1, 1952, have used the greater portion of the waters.

The order further recites that the Treaty between United States and Mexico at Washington, February 3, 1944, 59 Stat. 1219, apportioned the waters of the Rio Grande between users on the American side and those on the Mexican side of the river; that American users are entitled to a share of waters stored in a reservoir on the San Juan River in Mexico; that the International Boundary & Water Commission is willing to supplement the scant flow of the river by releasing waters from the reservoir for American use, but that between March 5th and March 31, 1952, when waters were released from the reservoir, some of the parties diverted the waters so that other persons down the river received none. Those are the facts before us as recited by the trial court's order.

The court established certain machinery to relieve this situation, and we think it may not be gainsaid that the situation is that of use by some persons of waters to such an extent that it deprives or will deprive others, equally entitled to the use, of a fair share or of any water at all. Relators urge that the machinery, though not so designated, was in fact a receivership in which event there was a supersedeas. Respondents reply that the machinery was an injunction, aided by a Master in Chancery.

The argument that the Master is a receiver seizes upon the following parts of the order: (1) The order recited that "justice requires that the present scant flow of the Rio Grande be taken into judicial custody and administered and controlled, pendente lite, under reasonable rules and regulations prescribed by the court." (2) The order recited that the correlative shares of available waters can not be enforced by prohibitory injunction, but required the prescribing and enforcing of just, reasonable and flexible rules, such as the court can modify from time to time, upon evidence and as reason and justice may require. (3) The order then ordered that all public waters of the river be taken into judicial custody to be administered in trust for all riparian owners, under orders of the court. (4) To administer the waters in trust, the court appointed a Master in Chancery and among his duties was the one:

"(c) Of enforcing all rules and regulations as prescribed by the Court; and recommending such amendments and additions thereto, as from time to time he may consider advisable, for hearing, considering and final action of the Court."

The argument that the order of the court did not name a receiver of trustee seizes upon the following matters:

(1) The petition in its prayer states that a prohibitory injunction can not do equity, but added, "unless issued in the light of the special situation for which injunctive relief is sought." (2) The order from which the appeal was perfected and from which relief by way of prohibition is sought in this proceeding is based upon a prayer for the issuance of a temporary injunction following a restraining order. After asking for the preliminary injunction, the prayer continues with a request for the appointment of a Special Master, "as prayed for by Plaintiffs." The portion in italics, we think, referred to an earlier prayer for a Master following the granting of a restraining order, and that prayer asked that he be charged with the duty of taking into judicial custody all pumping plants and diversion works on the left or American bank of the river, of preparing rules and regulations for use of such plants and works, and of enforcing such rules. (3) The designation of the Master's powers listed four items, one of which was mentioned in connection with the evidences of a receivership or trusteeship, and stated that he should "enforce all rules and regulations." The other powers are those characteristic and usual to a Master in Chancery, and were:

"(a) Of hearing all controversies arising between parties to this action with regard to the reasonable use of said water; and of reporting the evidence adduced with regard to such controversy, with his recommendations, for consideration and final determination by the Court.

"(b) Of holding hearings as to rules and regulations necessary to insure reasonable use of such waters by all persons entitled thereto; and of preparing at the earliest practical moment such rules and regulations as he may deem necessary to accomplish that purpose; which regulations shall be submitted to the Court for hearing and final determination, at such date as may be fixed by the Court.

"(c) * * * and recommending such amendments and additions thereto, as from time to time he may consider advisable, for hearing, considering and final action by the Court.

"(d) To advise the Court of all persons who have not been named as Parties Plaintiff or Defendant, whose in-

terest may be affected, or rights impaired, by the rules and regulations prescribed, orders entered, or final judgment rendered by the Court in this cause."

(4) The court in its order contemplated, by force of the changing nature as would be found and reported by the Master, that there would be further orders. It permitted and restrained use which we consider injunctive in nature, both permissive and prohibitory, as follows:

"2. Until further orders of this Court all water users, both Plaintiffs and Defendants, shall be permitted to use, and are limited to the use, except as hereinafter set out, of waters of the normal flow of the Rio Grande in the proportion which the acreages for which they customarily divert water from the normal flow of the Rio Grande shall bear to the whole number of acres in said Counties, for which such waters are customarily diverted; * * *."

(5) The court required an injunction bond in the amount of $25,000 for the two-fold purpose of protecting the court's jurisdiction and protecting its judicial custody of the normal flow of the river waters. (6) The court then ordered the clerk upon the filing of such a bond to issue a temporary writ of injunction. (7) The court ordered that the injunction command them "to cease and desist from diverting said waters, otherwise than in compliance with, and according to the rules and regulations which are hereby, or which hereafter shall be prescribed *by the court*." (8) The Master did not undertake to qualify as a receiver by making a bond or taking an oath as a receiver.

■■ Every power granted the Master by the court's order is appropriate to a Master, with the exception of that relating to the enforcement of rules and regulations. Ordinarily a Master in Chancery is not vested with the authority of a policeman. In Re Gordon, D.C., 250 F. 798. However that may be, the Master by the trial court's order was empowered to hear controversies and report evidence for consideration and final determination *by the court*; authorized to hold hearings as to rules and regulations; prepare such rules as will accomplish the purpose of insuring reasonable use by all persons, and those regulations were to "be submitted *to the Court* for hearing and final determination." He was told to recommend amendments and additions from time to time and those recommendations were to have the "final action *by the Court*." He was empowered to advise the court of the names of other interested persons. The court appointed a Master, and that he may have been given excessive powers which are matters for correction on appeal, does not make him something else. The enforcing tool, and the only tool mentioned in the order, from beginning to end, is the judicial power of injunction permitting and restraining the use of water, the amount of which would be variable and would require the services of a Master.

The second separate ground presented in support of the writ sought, is that the appeal divested the trial court and the Master of powers to proceed with further hearings and orders. In the relators' "Additional Petition for Prohibition, Injunction and General Relief," filed the day before the argument of this matter, it was urged that the trial court lost its jurisdiction over the temporary injunction when the appeal was perfected. By reason of the asserted loss of jurisdiction, a writ of prohibition was sought to prevent the trial court from making and entering further orders, directives and fiats with reference to the river waters. The trial court, following the appeal, set an additional hearing for June 13th, but the cause was argued to this Court on June 24th, and we have been furnished nothing which indicates that the June 13th hearing was conducted or that the trial court contemplates or now threatens to hold hearings or enter orders that would interfere with this Court's jurisdiction to enforce such orders as we might enter in the appealed cause. We have no reason to believe that the trial court will conduct hearings that will so interfere.

■ It is additionally urged that the Master is proceeding with the performance

of his duties as assigned by the trial court's order. Relators complain, however, that the Master was proceeding beyond the limits of his powers. Counsel for respondents in their argument to this Court freely admitted that the Master had no executive powers under the trial court's order, and that such acts were considered by them as void. Since both relators and respondents are in accord on the proposition that the Master may not exercise such powers, and the record does not convince us that the Master will exercise such powers, we see no necessity to grant the relief sought. However, it should be pointed out that if the trial court's jurisdiction was terminated by the perfection of the appeal, it does not follow that the Master has no powers at all. Nor does it mean that the Master in the performance of the proper functions as a Master is superseded, nor that the orders theretofore issued by the trial court to the Master are ineffective. Perfecting the appeal did not terminate the powers of the Master functioning under the trial court's order. At most, its effect was to make the Master responsible to this Court rather than the trial court.

We do not pass upon the merits of this case, but the appeal and this application present a matter of grave seriousness. No motion to advance the cause has been made, and the parties have agreed that the filing of appellants' brief may be extended until August 10th and that appellees may thereafter file their briefs not later than one week before the date the case is set for submission. On the basis of the record as briefed and presented to us, the trial court has met a pressing need and has provided a judicial method of equitably apportioning waters among those having correlative rights in the waters. Watkins Land Co. v. Clements, 98 Tex. 578, 86 S.W. 733, 70 L.R.A. 964; Prather v. Hoberg, 24 Cal.2d 549, 150 P.2d 405, 411; Rancho Santa Margarita v. Vail, 11 Cal.2d 501, 81 P.2d 533; McCoy v. Huntley, 60 Or. 372, 119 P. 481; Wiggins v. Muscupiabe Land & Water Co., 113 Cal. 182, 45 P. 160, 32 L.R.A. 667; Harris v. Harrison, 93 Cal. 676, 29 P. 325; 56 Am. Jur., Waters, § 356; 30 Am.Jur., Irrigation, § 15; Kinney on Irrigation and Water

Rights, 2d Ed., § 1559; Wiel on Water Rights, 3rd Ed., p. 820, § 751.

 Courts of Civil Appeals are not possessed of supervisory powers over trial tribunals. Their original jurisdiction is much more restricted than that of the Supreme Court. The writ of prohibition may issue from this Court for the sole purpose of protecting our jurisdiction. Article 1823, Vernon's Ann.Civ.Stats.; Adams v. Mitchell, Tex.Civ.App., 86 S.W.2d 884; Waxahachie Nat. Bank v. Hanes, Tex.Civ.App., 50 S.W.2d 424.

There is no proper showing that the trial court has entered or is about to enter a further decree or order which would interfere with the jurisdiction of this Court.

For the reasons stated, all relief prayed for by relators in their original petition, as well as the additional petition, is denied.