Argued 11 March; decided 29 April; rehearing denied 16 August, 1901.

### JONES *v.* CONN.

[64 Pa. 855; 65 Pac. 1068; 53 Cent. Law Jour. 128.]

WATERS—EXTENT OF RIGHT OF APPROPRIATION.

1. A riparian proprietor has a right to the use and enjoyment of the water that naturally flows past or through his land, subject to the right of other riparian owners to a reasonable use thereof for domestic, agricultural, and manufacturing purposes, provided that the upper proprietor does not appropriate enough to substantially injure the common right which each proprietor has.

WHAT AND WHEN LANDS ARE RIPARIAN.

2. Those lands are riparian that border on a stream, and are under one ownership, regardless of the area, the sources of title, or time of acquirement: thus, where the land of one person borders on a stream, and part of it is beyond the natural watershed, it is all riparian land; or, again, where an owner of riparian land subsequently acquires from one source, or from different sources, either one or more parcels of land contiguous to the first parcel, but not adjoining the stream, the later purchases become riparian.

RIGHT TO IRRIGATE LAND HIGH ABOVE THE STREAM.

3. Where defendant's use of the water of a stream for irrigating riparian land was not sufficient to materially injure plaintiffs, who were lower riparian owners, the fact that a part of the land irrigated by defendant was so far above the level of the stream that it could not be irrigated by ditches situated entirely on his own

land, did not entitle plaintiffs to an injunction restraining defendant's use of the water for irrigation, since defendant had the right to so use it so long as it did not materially injure the plaintiffs. In this connection, the question of the reasonableness of using water so far above the stream is not considered, as there is evidently enough water for all parties concerned.

INJUNCTION—MATERIAL INJURY NECESSARY.

4. A court of equity should not enjoin the use of water for a beneficial purpose unless it appears that other riparian owners will be materially injured; but the court should make such an order as will do justice to the interested parties in the present situation, and yet prevent the use of the water that is sought to be stopped from ripening into an adverse title, especially where one of the parties asserted an absolute title to enough water to irrigate his land, regardless of the rights of the others.

PLEADINGS—DECREE OUTSIDE THE ISSUES.

5. Courts should not undertake to settle rights that are not properly before them through the pleadings; thus, where one riparian owner sought to enjoin another such owner from using the waters of the stream on certain land because it was nonriparian, the court should not undertake to ascertain and determine the respective rights of the parties to the water, since the question of reasonable use to which each was entitled depended on the season, the volume of the water the area and character of the land, and other circumstances not in evidence, and hence there was no basis on which such a decree could properly be framed.

RIPARIAN LAND—SITUATION—DISTANCE FROM STREAM.

6. The right of a riparian proprietor to use the waters of a stream for a beneficial purpose is not limited to the watershed of the stream from which the water is taken, nor to bordering lands first segregated by the government.

EQUITY—DISCRETION AS TO COSTS—APPEAL.

7. Costs in equity cases are adjudged as the chancellor may deem proper, and his decision will not be reviewed on appeal unless it is manifestly wrong: *Dimmick* v. *Rosenfeld*, 34 Or. 101, applied.

From Lake : HENRY L. BENSON, Judge.

This is a suit by Geo. Jones and others against Geo. Conn to enjoin him from diverting the waters of Chewaucan River through a ditch recently constructed by him. The plaintiffs are riparian proprietors on the river, and the owners in severalty of divers tracts of arid land, aggregating several thousand acres. These lands are level, and, when irrigated, very fertile, but valueless without. The defendant is an upper riparian proprietor, owning eight hundred and seventy-five acres, through which the river flows a distance of one and three fourths to two miles, dividing on his premises into two main channels, flowing northeasterly and southeasterly, which in turn

subdivide into numerous channels and sloughs, through each of which the waters of the river have been wont to flow from time immemorial. The greater portion of defendant's land is elevated from seventy-five to eighty feet above the river. Three hundred and twenty acres of it are contiguous to, but acquired by different conveyances from, land immediately bordering on the stream. In the fall of 1896 and spring of 1897 the defendant constructed the ditch in question for the purpose of irrigating his upland, and furnishing better power to a gristmill, situated on the river a short distance below its forks, which he had theretofore owned and operated with water conveyed through a ditch about half a mile long, located on his own premises. The new ditch taps the river one and one half or two miles above his property, and has a carrying capacity of about two thousand five hundred inches. The upland he proposes to so irrigate is somewhat lower than the bluff between it and the river, and slopes slightly away therefrom, so that it is contended that any water used thereon for irrigation can not find its way by percolation back into the river. The object of this suit is to enjoin the defendant from using water through this ditch, on the theory that it is a wasteful and unnecessary means of supplying power to his mill, and that the land he proposes to irrigate is nonriparian. The defendant avers that all his lands are riparian, and that, as a riparian proprietor, he is entitled to two thousand six hundred and seventy-five inches of water for domestic, stock, irrigating, and manufacturing purposes; that all of his land is arid, and capable of being irrigated from the river, which carries a large amount of water during the irrigating season; that the amount he proposes to take and consume therefrom is reasonably necessary for the purposes indicated, and will not be of any material injury to the plaintiffs, or any of

them. The court below found that the defendant was entitled to take water through the ditch in question, but not to use it for the irrigation of lands contiguous to, but acquired by different conveyances from, land abutting directly on the stream, when such use will actually and sensibly affect the rights of the plaintiffs as riparian proprietors, and entered a decree perpetually enjoining and restraining him from diverting any of the waters of the river to irrigate such land, "to the actual and perceptible injury of the plaintiffs as riparian proprietors upon their riparian lands." From this decree both parties appeal.                                                    AFFIRMED.

For appellants there was a brief over the names of *E. D. Sperry, Austin S. Hammond,* and *E. M. Brattain,* with an oral argument by *Mr. Hammond.*

For respondent there was a brief over the names of *Chas. A. Cogswell, W. W. Wilshire,* and *L. F. Conn (Rufus Mallory,* counsel), with an oral argument by *Mr. Cogswell.*

. MR. CHIEF JUSTICE BEAN, after stating the case in the foregoing language, delivered the opinion.

1. This is a controversy between riparian proprietors upon a natural watercourse. There is virtually but one question involved in the case, and that is whether the lands which the defendant seeks to irrigate are riprarian in character. It is practically conceded that up to the commencement of the suit the plaintiffs had not been substantially injured or damaged on account of the use of the water by the defendant, and, as a consequence, are not entitled to an injunction if the lands are riparian ; but the contention is that they are nonriparian,

39 OR.—3.

and therefore the plaintiffs are entitled to an injunction restraining the use of the water thereon without proof of damage. It is common learning that every person through whose premises a stream of water flows has a right to its use and enjoyment as it passes through his land; but, as all other proprietors have a similar right, it necessarily follows that one can not use or divert the water to the injury of another. The right of each must be exercised in subordination to that of all the others. Within these limits, each proprietor is entitled to such use of the stream as may be conformable to the usages and wants of the community. It is often said that a riparian proprietor has a right, inseparably annexed to the soil, to have the water of a stream flow down to his land as it is wont to run, undiminished in quantity and unimpaired in quality; and that, if an upper proprietor takes it from the stream, he must return substantially the same quantity again before it leaves his premises. This rule; however, is subject to the limitation now well established that each proprietor is entitled to a reasonable use of the water for domestic, agricultural, and manufacturing purposes, and such use is not to be denied him on account of the loss necessarily consequent upon its proper enjoyment. In short, he has a right, in the language of Vice Chancellor BACON in *Earl of Sandwich* v. *Railway Co.*, 10 Ch. Div. 707, 712, "to make all the use he can — to derive every benefit he can — from the stream, provided he does not abstract so much as prevents other people from having equal enjoyment with himself"; or, as said by Lord KINGSDOWN in *Miner* v. *Gilmour*, 12 Moore P. C. 131, 156: "By the general law applicable to running streams, every riparian proprietor has a right to what may be called the ordinary use of the water flowing past his land; for instance, to the reasonable use of the water for his domestic purposes

and for his cattle, and this without regard to the effect
which such use may have, in case of a deficiency, upon
proprietors lower down the stream. But, further, he
has a right to the use of it for any purpose, or what may
be deemed the extraordinary use of it, provided that he
does not thereby interfere with the rights of other pro-
prietors, either above or below him. Subject to this
condition, he may dam up the stream for the purpose of
a mill, or divert the water for the purpose of irrigation.
But he has no right to interrupt the regular flow of the
stream, if he thereby interferes with the lawful use of
the water by other proprietors, and inflicts upon them a
sensible injury.''

The right of a riparian proprietor to the use of the
water of a stream flowing through his premises, and its
limitations, are well expressed in a Maryland case, where
the court say : ''The right of every riparian owner to the
enjoyment of a stream of running water in its natural
state in flow, quantity, and quality is too well established
to require the citation of authorities. It is a right inci-
dent and appurtenant to the ownership of the land itself,
and, being a common right, it follows that every proprie-
tor is bound so to use the common right as not to inter-
fere with an equally beneficial enjoyment of it by others.
This is the necessary result of the equality of right among
all the proprietors of that which is common to all. As
such owner, he has the right to insist that the stream
shall continue to run *uti currere solebat;* that it shall con-
tinue to flow through his land in its usual quantity, at
its natural place, and at its usual height. Without a
grant, either express or implied, no proprietor has the
right to obstruct, diminish, or accelerate the impelling
force of a stream of running water. Of course, we are
not to be understood as meaning there can be no diminu-
tion or increase of the flow whatever, for that would be

to deny any valuable use of it. There may be and there must be allowed to all of that which is common, a reasonable use; and such a use, although it may, to some extent, diminish the quantity, or affect, in a measure, the flow, of the stream, is perfectly consistent with the common right. The limits which separate the lawful from the unlawful use of a stream it may be difficult to define. It is, in fact, impossible to lay down a precise rule to cover all cases, and the question must be determined in each case, taking into consideration the size of the stream, the velocity of the current, the nature of the banks, the character of the soil, and a variety of other facts. It is entirely a question of degree, the true test being whether the use is of such a character as to affect materially the equally beneficial use of the stream by others": *Mayor, etc. of Baltimore* v. *Appold*, 42 Md. 442, 456.

It is accordingly now quite generally held in this country and in England that, after the natural wants of all the riparian proprietors have been supplied, each proprietor is entitled to a reasonable use of the water for irrigating purposes: Washburn, Easem. (2 ed.) *240; Gould, Waters (3 ed.), § 217; Long, Irr. § 11; Black, Pom. Water Rights, § 154; Kinney, Irr. § 273; 17 Am. & Eng. Ency. Law (2 ed.), 487; *Coffman* v. *Robbins*, 8 Or. 278; *Low* v. *Schaffer*, 24 Or. 239 (33 Pac. 678); *Weston* v. *Alden*, 8 Mass. 135; *Lux* v. *Haggin*, 69 Cal. 255, 394 (10 Pac. 674); *Blanchard* v. *Baker*, 8 Me. 253 (23 Am. Dec. 504); *Benton* v. *Johncox*, 17 Wash. 277 (61 Am. St. Rep. 912); *Baker* v. *Brown*, 55 Tex. 377; *Davis* v. *Getchell*, 50 Me. 602 (79 Am. Dec. 636, 643, note). The doctrine as applied to the arid regions of the West is thus stated by Mr. Justice McFARLAND in *Harris* v. *Harrison*, 93 Cal. 676, 680 (29 Pac. 326): "According to the common-law doctrine of riparian ownership as generally declared in

England and in most of the American states, upon the
facts in the case at bar the plaintiffs would be entitled to
have the waters of Harrison Canyon continue to flow to
and upon their land as they were naturally accustomed
to flow, without any substantial deterioration in quality
or diminution in quantity. But in some of the western
and southwestern states and territories, where the year
is divided into one wet and one dry season, and irrigation
is necessary to successful cultivation of the soil, the doc-
trine of riparian ownership has by judicial decision been
modified, or, rather, enlarged, so as to include the reason-
able use of natural water for irrigating the riparian land,
although such use may appreciably diminish the flow
down to the lower riparian proprietor.   *   *   *   Of
course, there will be great difficulty in many cases to de-
termine what is such reasonable use ; and 'what is such
reasonable use is a question of fact, and depends upon the
circumstances appearing in each particular case.'  *  *  *
The larger the number of riparian proprietors whose
rights are involved, the greater will be the difficulty of
adjustment. In such a case the length of the stream, the
volume of water in it, the extent of each ownership along
the banks, the character of the soil owned by each con-
testant, the area sought to be irrigated by each,—all
these and many other considerations must enter into the
solution of the problem ; but one principle is surely es-
tablished, namely, that no proprietor can absorb all the
water of the stream so as to allow none to flow down to
his neighbor.'' For the protection of the rights of the
several riparian proprietors it has even been held that a
court of equity may in a proper case apportion the flow
of the stream, after the natural wants of the several pro-
prietors have been satisfied, in such a manner as may
seem equitable and just under the circumstances : *Harris*
v. *Harrison,* 93 Cal. 676, 680 (29 Pac. 326); *Wiggins*

v. *Muscupiabe Water Co.* 113 Cal. 182 (45 Pac. 160, 32 L. R. A. 667); *Smith* v. *Corbit*, 116 Cal. 587 (48 Pac. 725).

2.    The plaintiffs admit the rule that, after the natural wants of all the riparian proprietors have been supplied, each is entitled to a reasonable use of the water for irrigating purposes, but insist that the exercise of the right must be limited to the tract of land through which the stream flows as first segregated and sold by the government of the United States, and that, even in such a case, where there are natural barriers within the tract which would prevent a portion of the land from deriving any benefit from the flow of the stream, the portion lying beyond the barrier should be excluded.    But, as we understand the law, lands bordering on a stream are riparian, without regard to their extent.    After a considerable search, we are unable to find any rule determining when part of an entire tract owned by one person ceases to be riparian.    The discussions in the books are restricted to a definition of riparian proprietors and their respective rights.    A riparian proprietor is one whose land is bounded by a natural stream, or through whose land it flows, and riparian rights are those which he has to the use of the water of the stream.    They are derived entirely from the ownership of the land, and not from its area or the source of its title.    Mr. Angell remarks : " The owners of watercourses are denominated by the civilians riparian proprietors, and the use of the same significant and convenient term is now fully introduced into the common law ": Angell, Water Courses (6 ed.), § 10.    Gould says : "Riparian rights proper depend upon the ownership of land contiguous to the water ": Gould, Waters (3 ed.), § 148.    And Kinney says that " the rights of riparian proprietors are such as grow out of, or are connected with, their ownership of the banks of the

streams and rivers": Kinney, Irr. § 57. And, again
(section 58): "Whether riparian rights attach or not,
the principal question depends upon the ownership of
the land which is contiguous to and touches upon the
water. And as to whether the land is in actual contact
with the flow of the stream, whether that contact be lat-
eral or vertical, it is necessary that it should exist."
Bouvier defines riparian proprietors as "those who own
land bordering upon a watercourse." Mr. Long, in his
recent work on Irrigation, in discussing this question,
says: "Some questions have been raised as to what
lands are to be considered riparian, within the sense of
the preceding section. Literally, of course, riparian
lands are lands bordering upon a stream, but it is some-
times a question as to how far back from the stream the
land may be considered riparian. There is very little
judicial authority on the question. It is plainly not
possible to define the distance to which the riparian pro-
prietor's right to use the water for irrigation or other
purposes extends, but this will depend upon the circum-
stances of each case. The only general rule that can
be laid down is that the distance and use should be rea-
sonable": Long, Irr. § 14.

It would seem, therefore, that any person owning land
which abuts upon or through which a natural stream of
water flows is a riparian proprietor, entitled to the rights
of such, without regard to the extent of his land, or from
whom or when he acquired his title. The fact that he
may have procured the particular tract washed by the
stream at one time, and subsequently purchased land
adjoining it, will not make him any the less a riparian
proprietor, nor should it alone be a valid objection to his
using the water on the land last acquired. The only
thing necessary to entitle him to the right of a riparian
proprietor is to show that the body of land owned by him

borders upon a stream. This being established, the law gives to him certain rights in the water, the extent of which is limited and controlled less by the area of his land than by the volume of water and the effect of its use upon the rights of other riparian proprietors. By virtue of the ownership of land in proximity to the stream, he is entitled to a reasonable use of the water, which is defined as "any use that does not work actual, material, and substantial damage to the common right which each proprietor has, as limited and qualified by the precisely equal right of every other proprietor": Kinney, Irr. § 276. In the determination of what will be considered such a use in a particular case, the character and extent of the land, its location, and the time of acquiring the title may all become, and are, no doubt, important factors to be considered ; but they are not controlling, and each case must depend entirely upon its own facts and circumstances. The case of *Boehmer* v. *Big Rock Irrg. Dist.* 117 Cal. 19 (48 Pac. 908), would seem to make the extent of riparian rights depend upon the source of title, rather than the fact of title ; but in *Alta Land & Water Co.* v. *Hancock*, 85 Cal. 219 (20 Am. St. Rep. 217, 24 Pac. 645), it was expressly held that all land bordering upon a stream which is held by the same title—in that instance consisting of one thousand two hundred and eighty acres —is riparian, and no distinction was made on account of the source of title. Again, in *Wiggins* v. *Muscupiabe Water Co.* 113 Cal. 182 (54 Am. St. Rep. 337, 32 L. R. A. 667, 45 Pac. 160), and *Bathgate* v. *Irvine*, 126 Cal. 135 (77 Am. St. Rep. 158, 58 Pac. 442), the right of a riparian proprietor to use the waters of a stream for irrigation was limited to the watershed. But, as we understand these cases, the court in each instance was determining the rights of the parties then before it, and not attempting to lay down an inflexible rule as a guide in all cases. Noth-

ing more was held or decided than that under the claim
alone of riparian rights the owner of land can not, to the
injury of another riparian proprietor, take the water be-
yond the watershed, or onto lands held by a title different
from the title of those through which the stream flows;
and this all will concede. The right to make a reason-
able use of the water of a stream is a right of property,
depending on the ownership of the land abutting on or
through which the stream flows; and whether a given
use is reasonable or not is a question of fact, to be deter-
mined under the circumstances of each particular case.
The right to use the water belongs to the owner of the
land, and the extent of its exercise is not to be determined
by the area or contour of his land, but by its effect upon
other riparian proprietors.

A reference to a few of the adjudged cases will illustrate
this principle. In *Norbury* v. *Kitchin*, 9 Jur. (N. S.) 132,
the defendant, a riparian proprietor, erected pumps and
conduit pipes to conduct the water of a stream across a
hill into a reservoir, to await the use of a house built by
him on property he had acquired subsequently to his
riparian property. It was held that the question whether
his use of the stream was reasonable under all the cir-
cumstances was properly left to the jury. In one of the
opinions it is said: "The defendant has built himself
a house on the side of a hill, and he formed a reservoir
to supply his house with water from the stream. This
exercise of his right seemed somewhat strong, and the
plaintiff's counsel were at one time inclined to rely upon
the distance of the house from the stream, but, probably,
upon reflection, they found it immaterial. The real ques-
tion in the case is whether a man who has three hundred
and twenty-one thousand gallons of water coming down
to him, can complain if ten thousand are taken before."
*Elliot* v. *Fitchburg R. R. Co.* 10 Cush. 191 (57 Am. Dec.

85), was an action to recover damages for the diversion of water by a railroad company, an upper proprietor, for the use of its locomotives, engines, and other similar purposes. It was contended at the trial that, if the jury were satisfied of the existence of the stream and the diversion of the water by the defendant, plaintiff was entitled to a verdict for nominal damage, without proof of actual damage; but the presiding judge instructed the jury that, unless plaintiff suffered actual perceptible damage in consequence of the diversion, the defendant was not liable in the action, and this direction was held to be right by the entire court. In the course of the opinion, Mr. Chief Justice SHAW says: "The right to flowing water is now well settled to be a right incident to property in the land. It is a right *publici juris* of such character that whilst it is common and equal to all through whose land it runs, and no one can obstruct or divert it; yet, as one of the beneficial gifts of providence, each proprietor has a right to a just and reasonable use of it, as it passes through his land; and so long as it is not wholly obstructed or diverted, or no larger appropriation of the water running through it is made than a just and reasonable use, it can not be said to be wrongful or injurious to a proprietor lower down. What is such a just and reasonable use may often be a difficult question, depending upon various circumstances. To take a quantity of water from a large running stream for agriculture or manufacturing purposes would cause no sensible or practicable diminution of the benefit to the prejudice of a lower proprietor; whereas taking the same quantity from a small running brook passing through many farms would be of great and manifest injury to those below, who need it for domestic supply, or watering cattle; and therefore it would be an unreasonable use of the water, and an action would lie in the latter case, and not in the former. It is, therefore,

to a considerable extent, a question of degree.  Still the rule is the same, that each proprietor has a right to a reasonable use of it, for his own benefit, for domestic use, and for manufacturing and agricultural purposes.''

In *Gardwood* v. *N. Y. Cent. etc. R. R. Co.*, 83 N. Y. 400 (38 Am. Rep. 400), a riparian proprietor was allowed to maintain an action to recover damages against a railroad company for diverting the waters of a stream and conveying them by pipes to reservoirs, where its locomotives were supplied with water, the proof showing that the water so diverted was sufficient ''to perceptibly reduce the volume of water '' in the stream, and to '' materially reduce or diminish the grinding power of plaintiff's mill,'' in consequence of which he sustained damage to a substantial amount.  In *Gillis* v. *Chase*, 67 N. H. 161, (68 Am. St. Rep. 645, 31 Atl. 18,) it is held that a riparian owner is not liable for a reasonable use of water passing his land, whether for his own purposes or for sale to others, and the reasonableness of his use is a question of fact.  In this case it is said : '' Each riparian proprietor having the right to a just and reasonable use of the water as it passes through and along his land, it is only when he transcends his right by an unreasonable and unauthorized use of it that an action will lie against him by another proprietor whose common and equal right to the flow and enjoyment of the water is thereby injuriously affected.  And as the reasonableness of the use is, to a considerable extent, a question of degree, and largely dependent on the circumstances of each case, it is to be judged of by the jury, and must be determined at the trial term as a mixed question of law and fact.''  In *Fifield* v. *Spring Valley Waterworks*, 130 Cal. 552 (62 Pac. 1054), it was held by the Supreme Court of California that a lower riparian proprietor who is not injured by the diversion of water by a corporation conducting and carrying on the

business of supplying the inhabitants of a city with water, can not restrain such diversion. In *Ulbricht* v. *Eufaula Water Co.*, 86 Ala. 587 (11 Am. St. Rep. 72, 6 South. 78, 4 L. R. A. 572), a riparian proprietor filed a bill to enjoin the diversion of water from the stream by an upper riparian proprietor, a water company, for the use of its waterworks, constructed to supply the inhabitants of a city with water. The testimony in the case established that the diversion of water for the purpose mentioned would result in a sensible diminution in the flow of the stream itself in the dry season or summer months, but that the complainant was making no particular use of the stream, and therefore suffered no special damage by the act of the defendant; and it was held that, as the defendant was taking the water for the purpose of supplying the wants of a neighboring town, and not returning it to its natural channel, the plaintiff was entitled to an injunction in vindication of his rights, without any special proof of damages; but, as he was not making any particular use of the water, the injunction should be so framed as only to restrain its use " to the sensible injury or damage of the complainant for any purpose for which he may now or in the future have use for it."

3. It is apparent, therefore, that the rule so often stated and reiterated in the books, that a riparian proprietor is entitled to have the entire flow of the stream come down to his premises, is subject to the important limitation that an upper riparian proprietor may make such a use thereof as does not work any actual, material, and substantial damage to the common right which each proprietor has; and, whether a proposed use is of the character referred to, and therefore reasonable, does not depend so much upon the area of the land of the offending proprietor, or the place of the use, as upon the effect

it has upon the correlative rights of the other proprietors. Under this doctrine the defendant was not a wrongdoer when he used the waters of the stream for the purpose of irrigation, nor does the fact that his land lies above the level thereof, so that it can not be irrigated by means of ditches wholly on his own premises, affect his right to the use of the water (*Charnock* v. *Higuerra*, 111 Cal. 473, 52 Am. St. Rep. 195, 44 Pac. 171, 32 L. R. A. 190), although it might have a material bearing upon the reasonableness of the use, if that question was here for decision : Gould, Waters (3 ed.), § 217. But there is no reason shown by this record why the defendant should be confined in the use of the water to any particular portion of his land. The amount of water taken and used by him before the trial was not sufficient to materially injure the plaintiffs, or to interfere in any substantial way with their rights as riparian proprietors. There seems to have been abundant water left in the stream after his diversion for the use of all the other riparian proprietors.

4. There is some conflict in the authorities as to whether a riparian proprietor can enjoin the use of water for the irrigation of nonriparian lands without showing damage (*Modoc Live Stock Co.* v. *Booth*, 102 Cal. 151, 36 Pac. 431 ; *Gould* v. *Eaton*, 117 Cal. 539, 49 Pac. 577, 38 L. R. A. 181 ; *Fifield* v. *Spring Valley Waterworks*, 30 Cal. 552, 62 Pac. 1054); but it is clear that a court of equity will not restrain the use of water by a riparian proprietor to irrigate his lands unless it is shown that such use will injure the other riparian proprietors : Gould, Waters (3 ed.), § 214. The plaintiffs, therefore, were not entitled to an injunction restraining the defendant from using the waters of the stream for the purpose of irrigation, because such use was no injury to them. But, as the defendant has set up in his answer, and attempted

to maintain by his testimony, the absolute right to suffi-
cient water to irrigate his land, regardless of the effect
it may have upon the other proprietors, the plaintiffs are
entitled to such a decree as will prevent his use from
ripening into an adverse title : Gould, Waters (3 ed.),
§ 214; Kinney, Irr. § 329; *Ulbricht* v. *Eufaula Water
Co.*, 86 Ala. 587 (6 South. 78, 14 L. R. A. 572) ; *New-
hall* v. *Ireson*, 8 Cush. 595 (54 Am. Dec. 790, and note).

5. It is suggested that the court ought to ascertain
and determine the rights of the respective parties, and
fix them in the decree, so that hereafter there may be no
controversy concerning the matter. In the very nature
of things, however, it is impossible in a case of this char-
acter to make such a decree. The rights of the several
riparian proprietors are equal, each being entitled to but
a reasonable use of the water for irrigating purposes, and
what constitutes such use must necessarily depend upon
the season, the volume of water in the stream, the area
and character of the land which each riparian proprietor
proposes to irrigate, any many other cicumstances ; so
that it seems to us there is no basis upon which the court
could frame any other decree than one enjoining and re-
straining the defendant from diverting the water from
the stream to the substantial injury of the present or
future rights of the plaintiffs, and, as the decree of the
court below is to that effect, it will be affirmed.

AFFIRMED.

Decided 16 August, 1901.

ON MOTIONS FOR REHEARING.

MR. CHIEF JUSTICE BEAN delivered the opinion.

6. Both parties have filed petitions for rehearing.
The plaintiffs insist that the court erred in not hold-

ing that the right of a riparian proprietor to use the
waters of a stream for irrigating purposes does not ex-
tend beyond the watershed, or to lands not first segre-
gated and sold by the government.   This question was
examined with great care before the opinion was formu-
lated.   No authorities are cited or arguments advanced
in the petition for rehearing not then fully examined
and considered, and therefore the conclusion heretofore
reached will be adhered to.

7.   The defendant contends that the court erred in
affirming that part of the decree which restrained him
from using the water to the actual and perceptible injury
of the plaintiffs, and in not decreeing that he recover
costs and disbursements in the court below.   The argu-
ment is that since the court held that he is entitled to
use the water to irrigate all his land if he does not thereby
interfere with the correlative rights of the other riparian
proprietors, and as the evidence did not show that he
had actually so interfered up to the time of the trial,
the complaint should have been dismissed.   This posi-
tion overlooks the fact noted in the original opinion that
the defendant sets up in his answer an absolute right to
divert two thousand six hundred and seventy-five inches
of water from the stream, and had actually constructed
a ditch for that purpose, tapping the stream one and one
half or two miles above his premises, through which he
was threatening to take the water at the time the suit
was commenced.   It was to prevent any future conten-
tion that this claim or the use of the water thereunder
had ripened into an adverse right as against the plain-
tiffs that the decree was so framed ; and such a decree
is manifestly within the power of a court of equity.
The fact that defendant had not used the entire amount
of water up to the time of the trial, and that plaintiffs

did not prove actual damage, constitutes no objection to the maintenance of the suit or the form of the decree : *Cache La Poudre Reservoir Co.* v. *Water Supply & Storage Co.* —— Colo. —— (62 Pac. 420). It was this avowed determination of the defendant, no doubt, that influenced the trial court to decree that he pay the costs, and its conclusion will not be disturbed, as there does not seem to have been any abuse of discretion : *Dimmick* v. *Rosenfeld*, 34 Or. 101 (55 Pac. 100). The petitions for rehearing are therefore denied.          REHEARING DENIED.