# Richmond

## TOWN OF GORDONSVILLE V. MRS. FLORA M. ZINN.

### March 17, 1921.

1. WATERS AND WATERCOURSES—*What are Riparian Waters—Lands Beyond the Watershed.*—According to the weight of authority, riparian land is, in any event, limited in its extent by the watershed of the stream; in other words, lands beyond the watershed cannot be regarded as riparian, though part of a single tract, held in a common ownership, which borders upon the stream.

2. WATERS AND WATERCOURSES—*What are Riparian Waters—Lands Beyond the Watershed—Case at Bar*—The land in question in a particular case, to be riparian, must, as one essential condition of fact, be located on the watershed of that portion of the stream which is in question, and where the dwelling house land of defendant in the instant case was below the land of the plaintiff, such dwelling house land is not riparian to the stream above plaintiff's land at a spot on other land of defendant from which she claimed the right to withdraw water for the dwelling house land, where any surplus water not used at the dwelling house would return to the bed of the stream below plaintiff's land.

3. WATERS AND WATERCOURSES—*What are Riparian Waters—Lands Beyond the Watershed—Case at Bar.*—Defendant's dwelling house was upon land lying back of plaintiff's riparian land and touching the stream below plaintiff's land. Defendant also owned a strip of land connecting her dwelling house land with the stream above plaintiff's land.

   *Held:* That defendant could not divert the water from above plaintiff's land over this strip to her dwelling house.

4. WATERS AND WATERCOURSES—*Riparian Rights—Diversion of Water by Upper Riparian Owner.*—The upper riparian owner cannot rightfully divert to non-riparian land water which he had the right to use on the upper riparian land, but which he does not so use.

5. WATERS AND WATERCOURSES—*Riparian Rights—Diversion of Water by Upper Riparian Owner—Qualification of Rule.*—In an action for damages or suit for injunction by a lower against an upper riparian landowner for wrongful diversion of water

by the latter, either upon the upper riparian land or therefrom to non-riparian land, the plaintiff, in order to prevail, must show some substantial actual damage occasioned by the diminution of the quantity of water which the plaintiff has the right to use, or (in cases of suits for injunction) threatened damages, by the claim of right of the defendant and his conduct in asserting same being of such character as to set in motion the running of the prescriptive period against the right of the plaintiff, so that in time such right would be barred by prescription unless the injunction is awarded.

6. WATERS AND WATERCOURSES—*Diversion of Water by Upper Riparian Owner—Extent of Relief.*—The extent of relief to which a complainant, in a suit for diversion of water by an upper riparian owner, is entitled, is measured by the extent of the right the complainant had to the use of the water. Where relief by injunction is sought by complainant, the right of use of the water, to the extent that it exists, should be protected from all substantial injury, whether actual or threatened, by the wrongful continuous diversion of the water by the upper riparian owner. Beyond this the court will not go to the relief of the plaintiff, whatever may be the lack of abstract right in the upper riparian owner to divert the water.

7. WATERS AND WATERCOURSES—*Riparian Rights—Town.*—The right of a town, the owner of a one-acre lot of riparian lands, to the use of the water of the stream, is limited to uses on its one-acre lot, and it has no right to divert any water not used on this riparian lot to the town itself, a non-riparian locality.

8. WATERS AND WATERCOURSES—*Riparian Rights—Deed Conveying Water Privilege.*—A riparian proprietor conveyed to a town a one-acre lot located on both sides of a stream, together with all the water and water rights and all the privileges appurtenant to said lot of land.

*Held:* That this deed did not confer upon the town the right to use any more water from the stream than was incident to the ownership of the one-acre lot.

9. WATERS AND WATERCOURSES—*Riparian Rights—Contract in Regard to.*—A contract between a riparian owner and a town, by which the town was permitted to enter upon the riparian owner's land to make improvements in his reservoir, and containing other provisions for maintaining the purity of the water, but declaring that it was not intended to limit the proprietor's legal rights to the water and the use thereof, does not divest or deprive the proprietor, his heirs and grantees, of any riparian rights possessed by them.

10. WATERS AND WATERCOURSES—*Diversion of Water—Lower Riparian Owner—Prescription.*—A lower riparian owner cannot,

by prescription, acquire, as against an upper riparian owner, the right to divert the water course, as the upper owner cannot be injured by such diversion and therefore has no legal ground to object thereto.

10. WATERS AND WATERCOURSES.—*Diversion of Water—Lower Ri-Prescription—Case at Bar.*—In the instant case, complainant, a town, owning a one-acre lot on both sides of a stream, by its adverse collection, dominion, and control of all of the water of the stream which flowed down to its lot, and its adverse diversion and use of all the water it had been diverting under claim of right for much longer than the prescriptive period before the instant suit was instituted, acquired by prescription a substantial right against all lower riparian land owners (and hence a vested right) to the exclusive use of the water to that extent, which right would be interfered with by the unlimited exercise of the right claimed by the defendant, an upper riparian owner, to divert the water to non-riparian land.

12. WATERS AND WATERCOURSES—*Riparian Rights—Acquisition by Prescription—Case at Bar.*—So, if, under the circumstances of the preceding syllabus, all injunctive relief were denied the town it woul dsustain substantial damage in times of drought from the action of defendant; and besides, such action, if not restrained to some extent, would set in motion the running of the prescriptive period against the town, which would in time bar, *pro tanto,* its exclusive right to the use of the water to the extent that it has by prescription acquired the right to use it, and therefore, it was error in the court below to dismiss the town's bill and refuse all injunctive relief.

Appeal from a decree of the Circuit Court of Orange county. Decree for defendant. Complainant appeals.

*Reversed and remanded.*

This is a suit for injunction, instituted by the appellant, the town of Gordonsville, a municipal corporation, against the appellee, Mrs. Flora M. Zinn, the object of which is to perpetually enjoin the latter from withdrawing any water whatsoever from the flow of a small non-navigable stream from a locality on such stream which is above the reservoirs of the town located on the stream, from

which reservoirs the town draws its municipal water supply.

There was a demurrer to the bill by the appellee. The court below sustained the demurrer and dismissed the bill; and the questions presented for decision on the appeal arise on the demurrer to the bill.

The material issues and facts as they appear from the allegations of the bill, are, in substance, as follows:

The town claims, as a lower riparian landowner, to be entitled (under a certain conveyance in 1889 from one B. F. Weaver; also under a certain contract in writing, in 1889, with one Alexander Cameron, the adjacent upstream owner of the land on both sides of the stream, including the spring, which is the source of such stream; and by prescription) to all of the water which flows from such spring and would in its natural course flow in said stream from the said Cameron land through the reservoirs of the town, except so much of the water as the said Cameron in his lifetime, and those claiming under him at the time of the institution of this suit, were entitled to use as upper riparian landowners with respect to the said stream and spring.

Prior to 1889, and to the construction of its reservoirs by the town, the said Weaver owned a large tract of land on both sides of said stream adjacent to the said Cameron land and immediately below it on such stream. In that year (1889), Weaver, from his said larger tract, conveyed to the town the parcel of land owned by it located as aforesaid on and so as to embrace both sides of said stream, consisting of one acre, in shape a parallelogram, 249 feet in length along the Cameron line and 175 feet in width. This deed also conveyed to the town "all the water and water rights and  *  *  *  all the privileges appurtenant to said lot of land." This deed was duly recorded in 1889.

The conveyance just mentioned left still belonging to Weaver a considerable tract of land which lay to the south

of the Cameron land and the parcel acquired by the town as just stated, the remaining Weaver land being bounded on the west by a portion of the eastern boundary line of the Cameron land for some distance, thence by northern, eastern and southern boundary lines of the town lot, and thence by the eastern boundary line of the Cameron land again.

In June, 1889, the aforesaid contract in writing between the town and the said Cameron was entered into, which, omitting the formal parts, is as follows:

"Whereas the said town of Gordonsville is desirous of constructing suitable works and reservoirs for the purpose of securing an abundant supply of pure water; and for this purpose hath purchased of B. F. Weaver an acre of land bounded on the west side of the lands of the said Cameron near his spring and reservoir, the water from which spring, in its natural flow, passes through the said acre of land; and

"Whereas, the said town is about to construct upon the said acre of land a suitable reservoir for the purpose of supplying water; and in order that said water may at all times be pure and clear, it is necessary that some changes and improvements should be made in the reservoir of the said Cameron, which lies between his spring and the reservoir intended to be built by the said town; and

"Whereas, the said Cameron is willing that the said town may make such changes and improvements in his reservoir as shall be necessary to secure the water in a clear and pure condition, provided his legal right to use and control the water from his spring and reservoir is not in any degree lessened.

"Now, therefore, and in consideration of the premises and the further consideration of $1.00 in hand paid, to the said Cameron by the said town, he, the said Cameron, doth give and grant unto the said town of Gordonsville the right to enter upon his land immediately in the vicinity of the said spring and reservoir on his farm near Gordonsville,

in the county of Orange, and to make such changes and improvements in the said reservoir, by clearing it up, lining, paving and coating the same and by elevating the water not higher than the present elevation of the discharge pipe from the spring into the reservoir and to enclose the same with a suitable and sightly fence so as to prevent all persons and animals having access to said spring and reservoir except the said Cameron, his representatives, servants, agents and assigns, and the proper officers of the said town of Gordonsville.

"But it is expressly agreed that neither party shall wash or bathe or permit to be washed or bathed human bodies or other things in said spring and reservoir which would tend to *polute* the waters therein.

"The rights herein granted the said town are to continue as long as the water works are kept in proper condition and the water needed for supplying said town as aforesaid.

"And the said town on its part covenants to, and with the said Cameron, and it will make improvements aforesaid, and in making them it will do no injury to his spring, reservoir and lands adjacent thereto. That all surplus dirt taken from his reservoir not utilized in their works shall be removed and deposited in some place not injurious to the lands and grass of the said Cameron.

"That in the improvements of his reservoir it will put in at proper place or places one or more discharge pipes for the use of said Cameron and of sufficient size to afford to said Cameron the use of the water from said spring to the same extent that he is entitled under the law to said water at this time. It being the intention of the parties to this deed that no restraints nor limitations shall by this deed be placed upon the legal rights of the said Cameron, his representatives and assigns as they now exist, to and over the water and the use thereof for any and all purposes for

which he may now lawfully use the same, and to secure to said town the right to cleanse and purify and keep clean and pure the water that will naturally flow into its reservoir.

"The exclusive use and control of the said discharge pipes shall at all times be and remain in said Cameron, his representatives and assigns, so as to afford to them the right to use the water to the same extent as now exists. The failure of the town of Gordonsville to make in a reasonable time the improvements herein mentioned and to construct and keep in proper repair its water works shall operate as a revocation of the rights of entry herein granted by the said Cameron to the said town of Gordonsville."

Under the Weaver deed, aforesaid, and under and in accordance in all respects with said contract between it and the said Cameron, the town (according to the allegations of the bill) "continuously from the 25th day of June, 1889, and before" collected in reservoirs, on its said one-acre parcel of land, all the water which flowed from said Cameron spring, except such as was used on the said Cameron land in supplying the dwelling-house and out-buildings of the said Cameron located on said Cameron land with the water there used, drawn from the discharge pipe places provided by the town in accordance with said contract, and the water collected in said reservoirs, as aforesaid, has been taken by the town and conducted in pipes from said reservoirs for some distance to the town of Gordonsville, and thus diverted from the natural channel of the stream, and has been used for municipal purposes and in supplying the inhabitants of the town with water. That this use of such water by the town has been a necessary use, the water thus taken by the town being all needed for its aforesaid purposes, and that during such period, of approximately thirty years before the institution of this suit, the said diversion by the town of such quantity of water, collected as afore-

said in its reservoirs, "has been absolute and unrestricted," * * * "without restriction, hindrance or objection, under a valid claim of right, without interruption (and) adversely;" and that, "in dry seasons there has been no overflow from the reservoirs of the town, the needs of the town having required every drop of water available from said spring."

The following also appears from the allegations of the bill:

Subsequent to the occurrences above narrated, the said Alexander Cameron acquired title to fifty-eight acres of the said residue of the Weaver land and added it to his holding of the original Cameron land, aforesaid. This fifty-eight acres lay adjacent to the original Cameron land, extending in a southwesterly direction from the southern end of the town lot, along the eastern line of the original Cameron land in that locality. This fifty-eight acres also extended in an easterly direction along the whole of the southern end of the town lot and thence along its eastern side to the said stream and to the east of such lot, so as to constitute a portion, at least, of such fifty-eight-acre parcel, lower riparian land with respect to the town lot and said stream.

The said Cameron did not in his lifetime make any use, on said fifty-eight-acre parcel of land, for any purpose, of any water taken from said stream above the town lot.

The said Cameron died in 1915, and in 1916, in the partition of his lands among his heirs, the said fifty-eight-acre parcel of land became the property of Mrs. Zinn, one of his heirs, and the said original Cameron land became the property of other heirs of said Cameron.

Thereafter the appellee built a handsome residence on the fifty-eight-acre parcel of land, located (as admitted in argument in the case) 350 to 400 feet east of the dividing line between such parcel and the original Cameron land. And thereupon a controversy arose between the town and the

appellee as to her right to withdraw water from the stream above the town lot for use on said fifty-eight-acre tract (presumably for domestic purposes, in connection with her dwelling-house, aforesaid). After such controversy arose, the appellee, by deed dated in May, 1917, acquired from the other Cameron heirs, aforesaid, title to a strip of the original Cameron land, twenty-five feet in width, containing 42/100 of an acre, extending from the center of the natural location of the channel of the stream, just above the town lot, thence southwestwardly along the original eastern line of the Cameron land first above mentioned, with the line of the town lot so far as that extends in that direction, thence with the line of the fifty-eight-acre tract aforesaid where that tract lies adjacent to the original Cameron tract aforesaid. And at the time of the filing of the bill the appellee claimed the right, and notifie dthe town that, "as upper riparian owner of the twenty-five-foot strip of land above mentioned, she intended as a matter of right to withdraw from the stream where such strip of land borders upon it and embraces a portion of it, sufficient water for such purposes as she saw fit," as alleged in the bill, but presumably, from the positions taken in the petition and in argument, for her natural uses in and about her dwelling-house on said fifty-eight-acre tract, by means of pipes laid from the stream, thence over the twenty-five-foot strip of land and adjacent fifty-eight-acre parcel to the dwelling-house.

The town denies that the appellee has any right to do this, claiming that this would be a diversion, *pro tanto*, of the water of the stream to the exclusive use of which the town is entitled, as it alleges as aforesaid, which would operate such an irreparable injury to the rights of the town, as alleged, that, in equity, as the town claims, the injunction prayed for should be awarded.

Other material matters are referred to in the opinion of the court.

*Shackelford & Robertson,* for the appellant.

*McGuire, Riely & Eggleston,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions raised by the assignments of error will be disposed of in their order as stated below.

[1]    1. Is the land owned by appellee, where her dwelling-house is located, riparian land, having reference to that portion of the stream which is immediately above the town lot, from which the appellee claims the right to withdraw water?

This question must be answered in the negative.

In the note to 11 L. R. A. (N. S.), p. 1062, this is said: "According to the weight of authority, riparian land is, in any event, limited in its extent by the watershed of the stream; in other words, lands beyond the watershed cannot be regarded as riparian, though part of a single tract, held in a common ownership, which borders on the stream."

The following cases are cited by the learned annotator to sustain this note, namely: *Chauvet* v. *Hill,* 93 Cal. 407, 28 Pac. 1066; *Southern California Invest. Co.* v. *Wilshire,* 144 Cal. 68, 77 Pac. 767; *Bathgate* v. *Irving,* 126 Cal. 135, 77 Am. St. Rep. 158, 58 Pac. 442; *Watkins Land Co.* v. *Clements,* 98 Tex. 578, 70 L. R. A. 964, 107 Am. St. Rep. 653, 86 S. W. 733; *Lux* v. *Haggin,* 69 Cal. 255, 425, 4 Pac. 919, 10 Pac. 674; *Boehmer* v. *Big Rock Irr. District,* 117 Cal. 19, 48 Pac. 908; *Crawford Co.* v. *Hathaway,* 67 Neb. 325, 60 L. R. A. 889, 108 Am. St. Rep. 647, 93 N. W. 781. An examination of these authorities discloses that they sus-

tain the text of the note above quoted. See also the principal cases to which said note is an annotation, namely: *Anaheim Union Water Co.* v. *Fuller,* 150 Cal. 327, 88 Pac. 978, 11 L. R. A. (N. S.) 1062, and 2 Farnham on Waters and Water Rights, p. 1571-3, which also sustains the text of such note.

In *Anaheim Union Water Co.* v. *Fuller,* just cited, this is said: "The principal reasons for the rule confining riparian rights to that part of lands bordering on the stream which are within the watershed are that, where the water is used on such land, it will, after such use, return to the stream, so far as it is not consumed, and that, as the rainfall on such land feeds the stream, the land is in consequence entitled, so to speak, to the use of the waters."

In 2 Farnham on Waters and Water Rights, sec. 463a, pp. 1571-2, this is said: "What is riparian land? It being established that the right to use the water of the stream is dependent solely upon the ownership of land which is in contact with the stream it becomes necessary to determine what, in fact, is riparian land. This question is not entirely free from difficulty. There are several things upon which the answer to the question might be made to turn. The first and most important is the natural configuration of the country through which the stream flows, so that all land within the watershed which lies in such a manner that the drainage from it finds its way into the stream might be regarded as riparian land. But a rule which would recognize such a vast extent of territory as riparian land would be almost as destructive of the right of the riparian owner as a rule which would permit any one who could gain access to the water to make use of it. Such a rule not only would permit the consumption of the water near its source of supply, but it would result in conflict between landowners as to rights of way and the construction of the necessary apparatus to make the water available. Another criterion

for determining what is riparian land might be the land which is in possession of one person whose holdings actually extend so as to come in contact with the water. This test, in some cases, might be too broad, because part of the land might lie out of the natural watershed of the stream, and therefore be outside of the boundaries established by nature for riparian ownership. The criterion which more nearly meets the necessities of the case is the rule that all land must be regarded as riparian which is within the natural watershed of the stream, the title to which is in one owner and the boundaries of which have been established in accordance with the requirements of the conditions which will best serve the interests of individual land owners * * * The watershed should certainly form a limit beyond which the riparian rights cannot be claimed; but there is a question whether or not that limit is not too wide. Much may depend upon the character of the stream. A river of large volume might appropriately supply the needs of the population living within its watershed, while a small stream could be used only by those living on its immediate bank. The most satisfactory rule is that the parcels of land should be regarded as riparian so far as their location with reference to the stream has indicated where their boundary should be fixed, so that all that parcel which is regarded as one tract should be regarded as riparian, leaving the question of the extent of the use which may be made of the water to the rules regulating the relative rights of owners on the stream. Under this rule the boundary of riparian land is restricted to land the title to which is acquired by one transaction."

See to the same effect notes in 9 Am. & Eng. Anno. Cas., pp. 1235-6, and Ann. Cas. 1913E, 709. See also *Stratton* v. *Hermon School,* 216 Mass. 83, 103 N. E. 87, 49 L. R. A. (N. S.) 57, Ann. Cas. 1915A, 768.

In the case of *Anaheim Union Water Co.* v. *Fuller, supra* (150 Cal. 327, 88 Pac. 978, 11 L. R. A. [N. S.] 1062), it is said that "where two streams unite, * * * the correct rule to be applied, in regard to the riparian rights therein, is that each is to be considered as a separate stream with regard to lands abutting thereon above the junction, and that land lying within the watershed of one stream above that point is not to be considered as riparian to the other stream."

In the case of *Miller* v. *Baker*, 68 Wash. 19, 122 Pac. 604 (a suit for injunction), the locations of the lands of the plaintiffs and defendants with respect to the stream and each other were practically the same as the locations with respect to those particulars of the town. lot and appellee's fifty-eight-acre tract in the case before us. In that case the land of the defendants abutted on the stream below the land of the plaintiffs, and thence extended along adjacent to and on. above the plaintiff's land, but away from the stream after defendants' land reached the plaintiffs' land. And in the opinion of the court this is said: "We find it unnecessary to decide at this time whether the defendants' lands are all riparian to this stream. For the purposes of this case it may be conceded that they are riparian. But it is clear that, if the whole tract owned by the defendants is riparian land, this is so because the stream crosses the tract at a point in the extreme southeast corner thereof" (below the plaintiffs' land). "The stream does not touch the defendant's land at any other point. The tract is, therefore, riparian to the stream at that point only. The mere fact that a tract of land touches a stream at one point does not make such land riparian at other points on the stream or to the whole of the stream. The riparian right of such land, or the owners thereof" (the court having reference to the right of withdrawing water from the stream) "is confined to the points where the land abuts upon the stream."

There are, therefore, under the above-mentioned authorities two limitations upon the extent away from the borders of a stream to which land held by one ownership can be considered as riparian—one, the broader limitation, that the land in question in a particular case, to be riparian, must, as one essential condition of fact, be located on the watershed of that portion of the stream which is in question; the other (which is a limitation upon such broader limitation), that the land is restricted to that to which the title was acquired by one transaction. As appears also from such authorities, according to their holding, the latter limitation is itself still further curtailed by the further limitation that the land cannot be considered as riparian in any event beyond the extent of the bounds of the grant from the Commonwealth. So that, as said in *Anaheim Union Water Co.* v. *Fuller, supra,* 150 Cal. 327, 88 Pac. 978, (11 L. R. A. (N. S.) 1062) : "If the owner of a tract abutting on a stream conveys to another part of the land not contiguous to the stream, he thereby cuts off the part so conveyed from all participation in the use of the stream and from riparian rights therein, unless the conveyance declares the contrary. Land thus conveyed and severed from the stream can never regain the riparian right, although it may thereafter, be re-conveyed to the person who owns the part abutting on the stream so that the two tracts are again held in one ownership."

The position is taken in argument for appellee that "All of the cases cited, in which riparian rights were restricted to land acquired by a single entry, involved land acquired by original government grant; and the cases arose in western States, where the common law doctrine as to property in natural streams was held to be inapplicable and it is insisted that such have no force in Virginia; where the common law rules have never been questioned." In this connection it should be said that it appears from the

decision of the States referred to that the holding in question was based, in part at least, on the common law doctrine referred to, which is expressly held to be in force in those States. See *Lux* v. *Haggin, Crawford Co.* v. *Hathaway,* and *Watkins Land Co.* v. *Clements, supra,* for the holding that such common law doctrine is in force in the western States in question. But it is true that these decisions in the particular just mentioned are largely influenced, as appears therefrom, by the consideration of the policy of the Federal and such western State governments with respect to confining the grants of land to any one individual to a limited quantity of land.

However, in view of the location of the dwelling house of the appellee with respect to the watershed of that portion of the stream in question in the case before us, at which dwelling the appellee claims the right to us the water, it is unnecessary for us to consider the question whether the land on which the dwelling house is located is or is not riparian land because of the fact that it was not acquired by one and the same transaction by which the title to the Cameron land was originally acquired. For, as we have seen, if such land is not on the watershed of that portion of the stream which is above the town lot, and if the residue of such tract of the appellee's land abuts on the stream only at a location below the town lot, it can, at most, be regarded only as lower riparian land as compared with the town lot, and cannot be held to be riparian at the aforesaid location above the town lot, regardless of whether the title to it and the other land of the appellee was or was not acquired in one transaction within the meaning of the decisions on that subject aforesaid. As we shall presently set out in more detail, the dwelling house land of the appellee is not on the watershed just mentioned and can, therefore, at most, be regarded only as lower riparian land as compared with the town lot aforesaid.

[2] Hence we do not wish to be construed as approving or disapproving in this opinion of the doctrine embodied in the limitations above mentioned other than the aforesaid broader limitation. We, however, do not approve of the doctrine of the last named limitation (to-wit, that the land in question in a particular case, to be riparian, must, as one essential condition of fact, be located on the watershed of that portion of the stream which is in question), and it is decisive against the appellee of the question of whether her dwelling house land is riparian at the location on the stream, above the town lot, at which the appellee claims the right to withdraw the water.

As a matter of fact, as appears before us aforesaid, the dwelling house land is located 350 to 400 feet east of the original Cameron land's eastern boundary line, whereas the town lot extends in width only 175 feet east of such Cameron land line where that line crosses the stream. The dwelling house land therefore is opposite a point on the stream 175 to 225 feet below the town lot and reservoirs, and, hence, as determined by its natural location, the dwelling house land of appellee is normally not upon the watershed of the stream above the town lot, but upon the watershed below such lot. That this normal situation conforms to the fact appears from the position taken for the town in the petition for appeal, that any surplus of water not used at said dwelling house will return to the bed of the stream below the town lot, which is not controverted in argument for the appellee.

There seems to be but one reported decision not in accord with the above mentioned authorities, and that is the case of *Jones* v. *Conn*, 39 Ore. 30, 64 Pac. 855, 65 Pac. 1068, 87 Am. St. Rep. 634, 54 L. R. A. 630, which is approved in *Clark* v. *Allaman*, 71 Kan. 206, 80 Pac. 571, 70 L. R. A. 971, 988, and cited in 40 Cyc. 558-9, where the doctrine of that case is stated. See the comment on the *Jones* v. *Conn Case* in note to 2 Farnham on Water and Water Rights, p. 1573.

Since the dwelling house land of appellee cannot be regarded as riparian with respect to the portion of the stream above the town lot, from which location appellee claims the right to withdraw the water, this brings us to the next question for our decision, and that is this:

[3]   Has the appellee the right to use, on her non-riparian dwelling house land, water rights incident to the twenty-five foot strip of the Cameron land, which is riparian to the portion of the stream, above the town lot, from which location appellee claims the right to withdraw the water?

This question must be answered in the negative.

The English doctrine on the subject is unquestionably to this effect.  See note to 22 L. R. A. (N. S.) p. 383 *et seq.* and especially the cases there cited of *Swindon Waterworks Co.* v. *Wilts & B. Canal Nav. Co.,* L. R. 7 H. L. 705, and *McCartney* v. *Londonderry, etc. R. Co.* (1904) A. C. 301.

[4]   The English doctrine, as usually stated, is that the upper riparian owner cannot rightfully divert to non-riparian land water which he had the right to use on the upper riparian land, but which he does not so use.

To the same effect is the holding of the American cases of *Williams* v. *Wadsworth,* 51 Conn. 277; *Crawford* v. *Hathaway, supra* (67 Neb. 325, 93 N. W. 781, 60 L. R. A. 889, 108 Am. St. Rep. 647), and *Gould* v. *Eaton,* 117 Cal. 539, 49 Pac. 577, 38 L. R. A. 181.

As said in the last cited case: "The superior proprietor cannot, however, divert to non-riparian lands the water which he would have a right to use, but which he does not in fact use. * * * If he does not in fact use any of the water himself the inferior proprietor has a right to the flow of the entire stream."

In 2 Farnham on Waters and Water Rights, this is said: "Diversion for use on non-riparian land.—As was seen

during the discussion of the question of the right to use the waters from the stream, there is no right to use it on non-riparian land. This rule makes the diversion of water for use there illegal. * * * * There are some exceptions to the rule thus broadly stated * * * * to give the lower owner a ground of complaint the quantity taken to the non-riparian land must be sufficient to inflict a perceptible injury on him." Citing both English and American cases.

The English case of *Earl of Sandwich* v. *Great Northern Ry. Co.,* L. R. 10, Ch. Div. 707, cited and relied on for appellee was expressly disapproved in the later case of *McCartney* v. *Londonderry, etc., R. Co., supra* (1904 A. C. 301).

In regard to the case of *Stonega Colliery Co.* v. *Hamilton,* 119 Va. 271, 89 S. E. 305, Ann Cas. 1917E. 60, cited and relied on for appellee to sustain the position that this court has held that the owner of two contiguous tracts of land may recover damages to both tracts due to the destruction of a spring on one of the tracts, this should be said: The opinion in the case does not, nor does the declaration, disclose the fact now to be mentioned; but as appears from the brief for plaintiff, which is not controverted in this particular, the spring, for the destruction of which damages were allowed, flowed in its natural channel from the one tract to the other, both tracts being riparian. Hence the case is not in point in the case now before us.

There is more seeming divergence in the holding of the American cases on the subject under consideration than there is among the English decisions, as appears from the following American cases cited and relied on for appellee, namely, *Elliot* v. *Fitchburg R. R. Co.,* 10 Cush. (Mass) 191, 57 Am. Dec. 85; *Stratton* v. *Mt. Hermon School, supra,* (216 Mass. 83, 103 N. E. 87, 40 L. R. A. (N. S.) 57, Ann. Cas. 1915A, 768); *Harris* v. *N. & W. Ry. Co.,* 153 N. C. 542, 69 S. E. 623, 31 L. R. A. (N. S.) 543, 138 Am. St. Rep.

686; *Atchison, etc. R. Co.* v. *Shriver,* 101 Kan. 257, 106 Pac.
519; and *Jones* v. *Conn, supra,* (39 Ore. 30, 64 Pac. 855, 65
Pac. 1068, 87 Am. St. Rep. 634, 54 L. R. A. 630) ; in which
*Gillis* v. *Chase,* 67 N. H. 161, 31 Atl. 18, 68 Am. St. Rep. 645,
is cited and quoted from.    (See also, *Jones* v. *Aqueduct,* 62
N. H. 488.)   But this divergence is, we think, more seem-
ing than real.

[5]  These American cases hold, or are based upon the
principle, that while accurately speaking the English doc-
trine referred to above is correct, still in an action for dam-
ages or suit for injunction by a lower against an upper ri-
parian landowner for wrongful diversion of water by the
latter, either upon the upper riparian land or therefrom to
non-riparian land, the plaintiff, in order to prevail must
show some substantial actual damage occasioned by the
diminution of the quantity of the water which the plaintiff
has the right to use, or (in cases of suits for injunction),
threatened damage, by the claim of the right of the defend-
ant and his conduct in asserting same being of such charac-
ter as to set in motion the running of the prescriptive period
against the right of the plaintiff, so that in time such right
would be barred by prescription unless the injunction is
awarded.    This, of course, is a proper qualification of the
English doctrine as stated above, for as pointed out by Chief
Justice Shaw in the opinion of the court in *Elliot* v. *Fitch-
burg R. R. Co., supra* (10 Cush. [Mass.] 191, 57 Am.
Dec. 85), and as is said in *Stratton* v. *Mt. Hermon School,
supra,* (216 Mass. at p. 88, 103 N. E. at p. 89, 49 L. R. A.
(N. S.) at p. 61, Ann. Cas. 1915A at p. 771) : "Any other
conclusion * * * * * would lead to the absurd result that
every riparian proprietor, from near the source of a river,
or any of its confluents, to the sea, could sustain and re-
cover nominal damages for an abstraction and diversion so
trifling as to be beyond the possibility of ever causing ac-
tual injury."

But the English doctrine does not, in truth, differ from the holding of the American cases above referred to with respect to the qualification just mentioned. That qualification is recognized by the English cases aforesaid. (See *Swindon Waterworks Co.* v. *Wilts, etc. Co., supra,* (L. R. 7 H. L. at p. 705], also *Norbury* v. *Kitchin,* 9 Jur. N. S. 132, cited for appellee, in which latter case the flow of the stream was 60,000 gallons and only 6,000 gallons were diverted by the upper riparian proprietor to non-riparian land, leaving the plaintiff, the lower riparian owner, an ample supply of water in quantity for the uses of it to which he was entitled.)

It would seem, therefore, that there is, in truth, no distinctly English or American doctrine on the subject under consideration, and that the doctrine is one and the same in both jurisdictions, being subject in both to the qualification aforesaid.

Further: It is plain that the qualification mentioned does not confer upon an upper riparian owner the right to use, on non-riparian land, water rights incident to the ownership of upper riparian lands such qualifications being primarily concerned with and directly affecting merely the extent of relief to which a lower riparian owner is entitled, who complains of the threatened or actual diversion by an upper riparian owner of water for use on non-riparian land.

This brings us to the next and sole remaining question for our consideration, namely:

3. What is the extent of the relief to which the town is entitled in the case before us?

As we have seen above, the threatened unrestricted diversion of water by the appellee must be regarded as wrongful. But,

[6] As appears from the authorities above referred to, (and especially from the American cases), and as results from the application of the principles involved, the extent

71

of the relief to which the town, as plaintiff, in such a case as that before us, is entitled, is measured by the extent of the right the plaintiff has to the use of the water. Relief by injunction being sought by the town, that right of use of the water, to the extent that it exists, should be protected from all substantial injury, whether actual or threatened, by the wrongful continuous diversion of the water by the upper riparian owner. Beyond this the court will not go to the relief of the plaintiff, whatever may be the lack of abstract right in the upper riparian owner to divert the water.

Now the case before us, as made by the allegations of the bill, is not one in which the plaintiff, the town, will suffer no actual damage and will not have the running of the prescriptive period set in motion and running against it, if the appellee is allowed to locate and insert her pipes and proceed to withdraw at all times the water she demands under the claim of right aforesaid. If this were a case in which, notwithstanding such action of the appellee, there would be still left flowing in the stream a sufficient quantity of water (the quality not being drawn in question in the case) to suply the town at all times with all the water it has acquired the right to use, the court below might properly have declined to decide the issue of right raised between the parties to the suit and might have properly refused to award the injunction. But such is not the case made by the bill.

[7-10]   It is true that the right of the town, as a riparian owner, to the use of the water of the stream, is under the authorities above mentioned limited to uses on its one-acre lot, and, as an original proposition, it had no more right to divert any water not used on this riparian lot to the town itself (a non-riparian locality), then the appellee has to divert to her dwelling house land water not used on her riparian Cameron land. It is also true, as we think,

that the Weaver deed to the town did not confer upon it the right to the use of any more water from the stream than was incident to the ownership of the one-acre lot. It is also true, that the contract of the town with the said Alexander Cameron did not divest or deprive him, or the appellee, as his heir or as grantee of the twenty-five foot strip of the land from his other heirs, of the riparian right claimed by appellee, if the said Cameron or the appellee would otherwise have possessed it. It is also further true, as urged in argument for appellee, that the adverse uses of the water by the town as lower riparian owner has not conferred upon the town any right thereto by prescription, as against upper riparian owners. As said in 30 Am. & Eng. Enc. of Law (2nd ed.) p. 365: "A lower riparian owner cannot, by prescription, acquire, as against an upper riparian owner, the right to divert the water course, as the upper owner cannot be injured by such diversion and therefore has no legal ground to object thereto." No cause of action ever arises in such case in favor of the upper against the lower riparian owner, so as to commence the running of the prescriptive period.

[11, 12] But, upon the facts alleged in the bill, the town, by its adverse collection, dominion and control of all of the water of the stream which flowed down to its said lot, and its adverse diversion and use of all the water it has been diverting under claim of right for much longer than the prescriptive period before this suit was instituted, has acquired by prescription a substantial right against all lower riparian landowners (and hence a vested right) to the exclusive use of the water to that extent, which right would be interferred with by the unlimited exercise of the right claimed by the appellee aforesaid. So that, if all injunctive relief to the town were denied the town would sustain substantial damage as appears from the allegations of the bill, in times of drought, from the afore-

said threatened action of the appellee, and besides, such action, if not restrained to some extent, would set in motion the running of the prescriptive period against the town, which would in time bar, *pro tanto,* its exclusive right to the use of the water to the extent that it has by prescription acquired the right to use it.

The case of *Williams* v. *Wadsworth, supra* (51 Conn. 277), in which the plaintiff was held to be entitled to an injunction, is, in essential particulars, on all fours with the case before us. We do not mean by this citation that we approve of all that is said in this opinion of the case, but its holding in result seems to us to conform to correct principles. In that case the plaintiff, on land acquired for that purpose, built and maintained a dam across a small stream and, for a longer period than what was held in that case to be the prescriptive period, diverted, as much water as would run through a two-inch pipe, to his farm, about half a mile distant, no part of which was riparian, for use on such farm, and also for sale to other persons. The stream in winter seasons was of considerable size, containing a volume of water largely in excess of that which plaintiff had acquired the prescriptive right to divert, but in summer it was reduced in quantity in times of drought, and when a drought was severe the flow of the stream was reduced to less than what would run through plaintiff's two-inch pipe. In the report of this case it is said: "In the winter season and in times of heavy rains (the) diversion caused no injury or damage to the plaintiff, but at times in the summer he has sustained injury by reason thereof." That suit was instituted shortly after the diversion by the defendant commenced. The court held that the defendant "should be enjoined against such use of the water upon land that was not riparian as will prevent the supply of the plaintiff's two-inch pipe."

So in the case before us, we are of opinion that the court below erred in dismissing the bill and in refusing all in-

junctive relief; that the bill should be retained; and that upon the coming in of the proof the appellee should be perpetually enjoined and restrained from withdrawing the water from the location aforesaid, or any above the reservoirs of the town, in such quantity at any time as will in any degree diminish the quantity of water, which the proof may show that the town has by prescription acquired the right to divert for its daily supply.

The decree under review will be reversed and annulled and the cause will be remanded for further proceedings not in conflict with the views expressed in the above opinion.

*Reversed and remanded.*